# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00082-SCT

*ROBERT SUTHERLAND*

*v.*

*ESTATE OF ROBERT M. RITTER, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2005 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RICK D. PATT |
| | SHANE F. LANGSTON |
| ATTORNEYS FOR APPELLEE: | WHITMAN B. JOHNSON, III |
| | SHELLY G. BURNS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 04/19/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the Hinds County Circuit Court's grant of summary judgment in favor the Estate of Robert M. Ritter, M.D., Robert Sutherland, a former patient of Dr. Ritter, appeals to us.  Finding no error in the trial court's grant of summary judgment and dismissal of this case, we affirm.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.    In June, 1999, Dr. Robert M. Ritter, a psychiatrist, prescribed for Robert Sutherland Zyprexa, a drug manufactured by Eli Lilly.[1]  Soon after, Sutherland developed side effects, including abnormal, involuntary movements by way of lip-licking and facial twitching. Sutherland subsequently stated under oath that Zyprexa caused the maladies for which he sought damages.  Without consulting Dr. Ritter, Sutherland stopped taking Zyprexa for a short period of time but eventually resumed taking the drug.  On April 16, 2001, Sutherland checked himself into St. Dominic-Jackson Memorial Hospital's Chemical Dependency Unit (St. Dominic).  In his deposition,[2] Sutherland stated the following:

> Q. Okay.  Now, did you check yourself into Dr. Cronin or were you checked in by someone?
> A. I checked myself.
> Q. Okay.  And why did you check yourself in?
> A. The Zyprexa was destroying my life.
> Q. Okay.  So you believed when you checked yourself in it was the Zyprexa?
> A. It was not a belief, it was a knowing.
> Q. Okay.
> A. It was knowledge of it.
> . . . .
> Q.  And while you were in the hospital at St. Dominic's under Dr. Cronin's care, was that the last time you took Zyprexa?
> A.  Yes, sir.
> . . . .

---

[1]Eli Lilly was named as an original party to the suit pursuant to a products liability theory.  The trial court granted summary judgment only as to Dr. Ritter's estate; however, the trial court thereafter appropriately entered final judgment consistent with the provisions of Miss. R. Civ. P. 54(b).  Today's appeal does not involve any claims as to Eli Lilly.

[2]The questions were asked by Dr. Ritter's attorney.

Q. All right. Did–but my understanding is you felt like the Zyprexa was causing you problems almost from the get-go.
A. Yes.
Q. And that you stopped it in (sic) at least by April 2001?
A. Stopped under the direction of Dr. Kenneth Cronin.

¶3. Sutherland was discharged from St. Dominic on April 19, 2001. Sutherland's discharge summary stated, "the Zyprexa has been discontinued and the patient reports that he feels less flat and 'zombie' like."

¶4. On January 31, 2002, Sutherland sought follow-up treatment from Dr. Lee Voulters. The report of Dr. Voulters states that Sutherland had taken "Zyprexa which caused a lot of bad side effects," and Dr. Voulters described the condition Sutherland complained of as Tardive Dyskinesia Syndrome (TDS).[3]

¶5. On January 30, 2004, two years and nine months after he was discharged from St. Dominic, Sutherland sent Dr. Ritter's estate[4] a Notice of Claim.[5] On March 30, 2004, Sutherland filed suit in the Circuit Court for the First Judicial District of Hinds County, and in due course, the trial court granted summary judgment in favor of Dr. Ritter's estate. Judge Swan Yerger's Order of Summary Judgment stated, *inter alia*:

---

[3]Tardive dyskinesia is a potentially irreversible syndrome of involuntary hyper-kinetic movements that occurs in predisposed persons receiving extended neuroleptic (antipsychotic) drug therapy.

[4]Dr. Ritter had by this time passed away.

[5]Pursuant to Miss. Code Ann. § 15-1-36(15) (Rev. 2003), the written notice of claim is required to be given at least sixty days prior to the commencement of a medical malpractice suit.

3

The Plaintiff, Robert Sutherland, alleges medical negligence on the part of the late Dr. Ritter. Specifically, Mr. Sutherland claims that Dr. Ritter was negligent in prescribing the medication Zyprexa which, in turn, caused a medical condition called tardive dyskinesia syndrome exemplified by various symptoms. However, Mr. Sutherland last took Zyprexa during April 2001, and yet he took no steps to initiate legal action until January 2004. This is problematic since Mississippi Code Annotated § 15-1-36, which governs medical malpractice claims reads in pertinent part as follows:

> [N]o claim in tort may be brought against a licensed physician . . . for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered . . .

*See* § 15-1-36(2) Miss. Code Ann. (Rev. 2003).

¶6. After Judge Yerger entered a final judgment of dismissal consistent with the order granting summary judgment, Sutherland perfected his appeal to this Court.

## DISCUSSION

¶7. The parties in essence couch the issue that this Court must decide as whether Sutherland's injury was latent so that the discovery rule would apply to toll the statute of limitations. Upon reflection as to how this Court has previously dealt with this issue in the medical malpractice context, we recognize our use of the term, "latent injury" in previous cases has led to confusion and misunderstanding of the discovery rule, and we therefore take this opportunity to clarify the law. Thus, we restate the issue for the sake of clarity in discussion.[6]

---

[6]Counsel for the parties have very ably presented and addressed the issues, consistent with our case law, dealing with latent injuries and the discovery rule as it concerns the

4

**WHETHER THE DISCOVERY RULE APPLIES TO TOLL THE STATUTE OF LIMITATIONS IN THIS MEDICAL MALPRACTICE CASE.**

¶8.     "The standard of review in considering on appeal a trial court's grant or denial of summary judgment is de novo." *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (Miss. 2006) (citing *Satchfield v. R.R. Morrison & Son, Inc.*, 872 So. 2d 661, 663 (Miss. 2004)). "In considering this issue, we must examine all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits." *Id.* (citing *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996)). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Id.* (citing *Aetna*, 669 So. 2d at 70). "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and the other party takes the opposite position." *Id.* (citing *American Legion Ladnier Post No. 42 v. Ocean Springs*, 562 So. 2d 103, 106 (Miss. 1990)). "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor." *Id.* (citing *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005)). "The movant carries the burden of demonstrating

---

applicable statute of limitations on such matters as the running or the tolling of the applicable statute. However, when we read the excellent briefs of the parties as they dutifully address these issues by applying prior decisions from this Court, the urgent need for clarification of our prior cases becomes readily apparent so as to immediately lend aid to the trial bench and bar in dealing with these issues in the medical malpractice arena. Again, this need for clarification is not the fault of the parties and counsel, but instead is due to ambiguities which we have created in our prior decisions.

that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact issue." *Id.* (citing *Monsanto*, 912 So. 2d at 136). "However, our decisions which discuss this rule are clear that when a motion for summary judgment is made and supported as provided in Miss. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 483-84 (citing *Stuckey v. Provident Bank*, 912 So. 2d 859, 864 (Miss. 2005)). "If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed." *Id.* at 484 (citing *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000)).

¶9.     Sutherland argues that his injury was latent and, thus, the discovery rule applies. Sutherland further argues that the statute of limitations did not begin to run until January 31, 2002, which is the date Sutherland learned that the condition from which he suffered was called TDS. On the other hand, Dr. Ritter's estate argues that Judge Yerger correctly held that the statute of limitations began to run, at the latest, in April, 2001, when Sutherland, by his own admission, knew that Zyprexa was the cause of his symptoms.

*Latent injury – undiscovered negligence*

¶10.    The word "latent" means "[h]idden; concealed; dormant; that which does not appear upon the face of a thing." Black's Law Dictionary 794 (5th ed. 1979). "Latent" has also been defined as "present but invisible or inactive; lying hidden and undeveloped within a person or thing." Webster's New Word Dictionary 762 (3rd College ed. 1988). This Court has

6

defined a latent injury "as one where the 'plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.'" *Neglen v. Breazeale*, 945 So. 2d 988, 991 (Miss. 2006) (citing *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005); *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)).  Thus, a latent injury is an injury which is hidden or unseen.

¶11.   The confusion associated with the term "latent injury" apparently results from the difference in the language of Miss. Code Ann. § 15-1-49 (Rev. 2003), the general statute of limitations, which provides for tolling of the statute of limitations until a "plaintiff has discovered, or by reasonable diligence should have discovered" a "latent injury or disease."[7]

¶12.   The discovery rule for medical negligence cases, however, is different.  The inquiry does not center on a latent injury, but rather on "the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered . . . ."  Miss.

---

[7]**§ 15-1-49.  Limitations applicable to actions not otherwise specifically provided for.**

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
> (3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

Code Ann § 15-1-36(2) (Rev. 2003).[8] Thus, in medical negligence cases, we must focus our inquiry on when a plaintiff, exercising reasonable diligence, should have first discovered the negligence, rather than the injury. In applying the unambiguous language of Miss. Code Ann. § 15-1-36(2), although a hidden or unseen injury might very well serve to trigger the discovery rule and toll the statute of limitations, it is not because the injury itself is hidden or unknown, but rather because the negligence which caused the injury is unknown. Furthermore, in the medical malpractice context, the discovery rule may apply in cases where the injury is not latent at all, but where the negligence which caused the known injury is unknown. For instance, a patient who undergoes a medical procedure may develop serious complications which are clearly known. However, if the patient has no reason to know that the doctor's negligence in performing the procedure caused the complications, the discovery rule will apply, even though the injury itself is not latent at all.

¶13. Judge Yerger clearly understood this distinction and applied it to the facts of this case. In his Order of Summary Judgment, he stated that "[b]y April 2001, at the latest, there existed a basis for initiation of reasonable diligence on Mr. Sutherland's part such that might allow him to discover Dr. Ritter's alleged negligence."

¶14. In recent cases, we have discussed the discovery rule in medical malpractice cases brought under the Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1, et seq. (Rev. 2002)) (MTCA) concerning the applicability of the discovery rule to the MTCA's one-year

---

[8]Two exceptions are found in section 15-1-36(2) (foreign object left in patient's body and fraudulent concealment of cause of action), neither of which apply in today's case.

statute of limitations found in section 11-46-11(3). **Wright v. Quesnel,** 876 So. 2d 362 (Miss. 2004); **Wayne Gen. Hosp. v. Hayes**, 868 So. 2d 997 (Miss. 2004). Other cases, such as **PPG Architectural Finishes, Inc. v. Lowery**, 909 So. 2d 47 (Miss. 2005), discuss the discovery rule in relation to the "catch-all" statute of limitations found in Miss. Code Ann. § 15-1-49 (Rev. 2003), which expressly mentions latent injuries or diseases. However, even in **Hayes**, we stated that our discovery rule will only toll the statute of limitations "until a plaintiff 'should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent.'" 868 So. 2d at 1000-1001 (quoting **Sarris v. Smith**, 782 So. 2d 721, 725 (Miss. 2001)). In **PPG**, we stated that "'a plaintiff knew or reasonably should have known that some negligent conduct had occurred, even if they *did not know with certainty* that the conduct was negligent as a matter of law.'" 909 So. 2d at 51 (emphasis in original) (citing **Hayes**, 868 So. 2d at 1000).

¶15. According to the facts of today's case, we find that Sutherland's own suspicions and actions thereon, together with the passage of time from when Sutherland first recognized the adverse effects from the Zyprexa until Sutherland checked himself into the hospital in April, 2001, were enough to satisfy the statutory requirement of discovery of the alleged medical negligence on the part of Dr. Ritter. Sutherland originally knew or suspected that Dr. Ritter's prescription of Zyprexa caused his undesirable side effects no later than the date of his discharge from St. Dominic on April 19, 2001, because he stated that "[t]he Zyprexa was destroying my life" and that "[i]t was not a belief, it was a knowing."

9

¶16.    By his own admission, Sutherland knew who, when, how, and by what he had been injured soon after receiving treatment and the Zyprexa prescription from Dr. Ritter, and certainly, no later than the date of his discharge from St. Dominic.  Considering Sutherland's actions, we conclude that Sutherland knew that Dr. Ritter's prescribing him Zyprexa had caused him to suffer *an injury*.

¶17.    In sum, we conclude from the record before us that Sutherland knew, soon after receiving his treatment from Dr. Ritter, that the Zyprexa had caused undesired effects. Almost two years later, he checked himself into St. Dominic on April 16, 2001; clearly by the time of his discharge from the hospital on April 19, 2001, and his termination of Dr. Ritter as his physician, Sutherland was on notice of Dr. Ritter's alleged negligence. Therefore, Sutherland unquestionably knew, at least by April 2001, that Zyprexa was causing his troubles and that Dr. Ritter had prescribed the drug.  By reasonable inquiry, Sutherland should, or with reasonable diligence might have discovered the alleged negligence.  Thus, the discovery rule would not toll the statute of limitations beyond the date of April 19, 2001, when Sutherland was discharged from the hospital. Therefore, the statute of limitations had long since expired by the time Sutherland submitted his statutory notice of claim to Dr. Ritter's estate on January 30, 2004.

## CONCLUSION

¶18.    For the reasons stated, the judgment of dismissal entered by the Circuit Court for the First Judicial District of Hinds County is affirmed.

¶19.    **AFFIRMED.**

10

**SMITH, C.J., WALLER, P.J., DICKINSON AND RANDOLPH, JJ., CONCUR.
DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY
AND GRAVES, JJ. COBB, P.J., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING:**

¶20. Because today's opinion effectively precludes any action against a physician where the patient does not discover the injury before the one-year statute of limitations, I must dissent.

¶21. The assertion that "we must focus our inquiry on when a plaintiff, exercising reasonable diligence, should have first discovered the negligence, rather than the injury," simply defies logic. Discovery of the injury is necessarily discovery of negligence. A cause of action for negligence does not exist without injury. It is elementary tort law that in order to prove negligence, a plaintiff must prove duty, breach of duty, proximate cause, and an injury. *Holliday v. Pizza Inn*, 659 So. 2d 860, 864 (Miss. 1995) (quoting *Skelton v. Twin County Rural Elect. Ass'n*, 611 So. 2d 931, 936 (Miss. 1992)). Accordingly, in medical malpractice cases, "the discovery rule protects persons with latent injuries." *Neglen v. Breazeale*, 945 So. 2d 988, 990 (Miss. 2006). *See also Flores v. Elmer*, 938 So. 2d 824 (Miss. 2006) (applying latent injury analysis to medical malpractice claim); *Blailock v. Hubbs*, 919 So. 2d 126 (Miss. 2005) (finding injuries were not latent and therefore the discovery rule did not apply); *Wright v. Quesnel*, 876 So. 2d 362 (Miss. 2004) (same); *Robinson v. Singing River Hosp. Sys.*, 732 So. 2d 204 (Miss. 1999) (same); *Williams v.*

11

***Kilgore***, 618 So. 2d 51 (Miss. 1992) (applying latent injury analysis to medical malpractice claim).[9]

¶22.    The majority finds that the "confusion" over the application of latent injury analysis to medical malpractice cases is a result of the language found in Miss. Code Ann. § 15-1-49. However, even before this statute was amended to include a provision for latent injuries, this Court recognized the common law exception for latent injuries. ***Barnes***, 733 So. 2d at 205 (Miss. 1999) (citing ***Schiro v. American Tobacco Co.***, 611 So. 2d 962, 965 (Miss. 1992)). Furthermore, as explained in ***Williams***,

> [t]he applicability of Miss. Code Ann. § 15-1-49 (1972) to medical malpractice actions was supplanted by the enactment of Miss. Code Ann. § 15-1-36 (1972) (as amended), which created a two year statute of limitations specifically for medical malpractice actions. Although the new statute shortened the limitation period, it liberalized and memorialized the definition of "accrual," providing that the statute begins to run "from the date the alleged act, omission or neglect shall or with reasonable diligence might have first been known or discovered."

618 So. 2d at 53-54.  The Court went on to say, "[t]he operative time is when the plaintiff can reasonably be held to have *knowledge of the injury* itself, the cause of the injury, and the causal relationship of the injury and the conduct of the medical practitioner." ***Id.*** at 54 (quoting ***Smith v. Sanders***, 485 So. 2d 1051 (Miss. 1986)) (emphasis supplied).  The

---

[9]The discovery rule also protects medical malpractice plaintiffs who were aware that an injury had occurred but could not discover the cause of the injury until the statute of limitations had run.  ***Sarris v. Smith***, 782 So. 2d 721 (Miss. 2001); ***Pickens v. Donaldson***, 748 So. 2d 684 (Miss. 1999); ***Smith v. Sanders***, 485 So. 2d 1051 (Miss.1986); ***Barnes v. Singing River Hosp. Sys.***, 733 So. 2d 199, 206 (Miss. 1999).

12

majority, however, not only refuses to recognize our prior precedent, but the common law as well.

¶23.   The majority holds that medical malpractice plaintiffs must file their causes of action even if they are unaware of any injury.  However, had the plaintiff in this case filed a claim before his diagnosis, his case would have been dismissed because he could not have proven any injury.  It has been long established that, "[a] cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action accrues, it will generally be dismissed if proper objection is made."  *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704, 706 (Miss. 1990) (quoting *Estate of Kidd v. Kidd*, 435 So. 2d 632, 635 (Miss. 1983)).

¶24.   For the foregoing reasons, the majority's analysis is highly flawed, and this Court should not remove the long-established latent injury exception from medical malpractice claims.

¶25.   Regarding the latent injury issue, our summary judgment jurisprudence demands that "the evidence be viewed in the light most favorable to the party against whom the motion has been made."  *Gant v. Maness*, 786 So. 2d 401, 403 (Miss. 2001) (citing *Massachusetts Bay Ins. Co. v. Joyner*, 763 So. 2d 877, 878 (Miss. 2000)).  According to case law, "discovery [of an injury or disease] is an issue of fact to be decided by a jury where there is a genuine dispute."  *Schiro v. American Tobacco Co.*, 611 So. 2d 962 (Miss. 1992).  In reviewing the record, there remains an issue of fact as to whether Mr. Sutherland had knowledge of the injury or was aware of his symptoms.

13

¶26.   First, the majority improperly construes the immediate side-effects that Mr. Sutherland experienced and his subsequent "potentially irreversible syndrome" as one and the same. Mr. Sutherland experienced a number of symptoms while taking Zyprexa, including oversedation and increased anxiety. Once he stopped taking the medication, Mr. Sutherland testified that these immediate side-effects eventually stopped. It was not until his visit with Dr. Voulters, where he was finally diagnosed with TDS, that he was aware of any potentially permanent neurological disorder. As Dr. Hiatt, Mr. Sutherland's expert, stated in his sworn affidavit, "Robert Sutherland could not have known that the tardive dyskinesia was caused by the Zyprexa prescribed by Dr. Ritter until after he was diagnosed with tardive dyskinesia on January 31, 2002."

¶27.   According to the Center for the Study of Autism, "[t]ardive dyskinesia may appear anywhere from three months to *several years* after initial use of these medications." Stephen M. Edelson, *Tardive Dyskinesia*, Center for the Study of Autism (1995) (emphasis added). Therefore, while Mr. Sutherland may have been aware of some immediate adverse side-effects, he has sufficiently demonstrated that neither he nor any medical professional could have known of any permanent neurological damage until he was diagnosed by Dr. Voulters. By April 2001, Mr. Sutherland had already sought a second opinion at St. Dominic, yet there is no mention of TDS in any of his medical records from this time. I fail to see what further "reasonable diligence" Mr. Sutherland could have exercised in order to discover his resulting syndrome, which may take years to develop. Mr. Sutherland stated in his deposition that Dr. Ritter never told him that TDS was a possible side-effect. Mr. Sutherland also stated that Dr.

14

Ritter told him to continue taking the drug and that it was "safe." These facts are further supported by Dr. Ritter's notes.

¶28. Second, Mr. Sutherland's medical records indicate that he was referred to St. Dominic "because of possible Xanax abuse," and not because of the adverse side effects he experienced with Zyprexa. In his motion for summary judgement, Dr. Ritter states that "at that time he expressed a specific perceived need to get 'off of Zyprexa.' See Exhibit 'G'." Yet, Exhibit G consists of a single page from Mr. Sutherland's medical records which makes no mention of Zyprexa. Furthermore, Mr. Sutherland was taking a number of drugs, and testified that at the time he checked into St. Dominic, he wanted to "come off those medications," including Xanax and Zyprexa.

¶29. We have held that in cases involving summary judgment "[i]f there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party." *Aetna Casualty & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996) (citing *Ratliff v. Ratliff*, 500 So. 2d 981, 981 (Miss. 1986)). The record demonstrates substantial doubt as to whether a fact issue exists. Therefore, because there are material issues of fact that should be left to the jury, summary judgement was improper and the case against Dr. Ritter should proceed.

**EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**

15