# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01192-SCT

*MICHAEL STRINGER AS NATURAL FATHER
AND NEXT FRIEND OF ALICIA STRINGER, A
MINOR*

*v.*

*JAMES T. TRAPP, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2008 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM W. FULGHAM |
| | ERIN S. ROGERS |
| ATTORNEYS FOR APPELLEE: | ROBERT K. UPCHURCH |
| | JOSHUA SHEY WISE |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 03/18/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., LAMAR AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     This medical malpractice action was dismissed because the trial court determined that the statute of limitations had run before the filing of the complaint.  The plaintiff appeals, arguing that the discovery rule should have served to toll the statute of limitations.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 6, 2005, the plaintiff, thirteen-year-old Alicia Stringer, sought treatment from West Point Family Medical Clinic for nausea, abdominal pains, diarrhea, and severe

cramping. At the clinic, a nurse practitioner advised her to seek emergency care at the North Mississippi Medical Center ("NMMC"). In the emergency department of NMMC, Dr. Steve Noggle treated Stringer for the presenting issues, diagnosed gastroenteritis, administered medication, and discharged her.

¶3. For the next several days, the symptoms persisted, and, on January 10, 2005, the plaintiff again sought treatment at the West Point Family Medical Clinic, where she was advised to seek emergency care. Stringer was immediately taken to the emergency room at NMMC, where she again was examined by Dr. Noggle, and it was discovered that Stringer had extremely high levels of white blood cells, indicative of infection.

¶4. Dr. Noggle admitted Stringer to the hospital, where she was transferred to the care of Dr. Timothy Whittle, an obstetrician and gynecologist. Dr. Whittle's assessments and analyses resulted in his ordering an abdominal scan for more extensive diagnostic purposes, the results of which were read by a radiologist, Dr. James Trapp. Dr. Trapp's report of January 10, 2005, initially indicated that plaintiff had multiple "cystic masses;" however, the following day, Dr. Trapp amended his report to say that the "cysts" may, in fact, have been "abscesses," and that the plaintiff could have been suffering from appendicitis. The plaintiff asserts that this addendum was not made available to the treating physician, Dr. Whittle, who continued to treat Stringer for gynecologic issues. According to the complaint, Dr. Whittle informed Stringer's mother that a hysterectomy might be necessary.

¶5. On the morning of January 12, 2005, Stringer sought a second opinion at Oktibbeha County Hospital, where exploratory surgery was performed, revealing that Stringer was

suffering from acute, gangrenous, and perforated appendicitis. Following an emergency appendectomy, the plaintiff remained hospitalized until January 21, 2005.

¶6. A month later, on February 23, 2005, Stringer retained counsel and on March 29, 2005, counsel for Stringer requested her medical records, which were received by Stringer's counsel on April 14, 2005. On January 5, 2007, Stringer's father filed suit on her behalf against NMMC, Dr. Whittle, and Dr. Noggle, alleging that they were negligent by failing to diagnose and properly treat Stringer's appendicitis. The initial complaint did not name Dr. Trapp as a defendant, but noted that he had performed a CT scan on Stringer and had prepared a CT report, which was supplemented by an addendum.[1]

¶7. On March 14, 2007, two years and sixty-one days after Stringer's emergency appendectomy, the plaintiff amended her complaint, adding Dr. Trapp as a defendant. Dr. Trapp moved for dismissal under Mississippi Rule of Civil Procedure 12(b)(6), arguing that the statute of limitations began to run on January 11, 2005, the day he amended his report, and therefore, the limitations period expired on March 12, 2007.[2] The trial court ordered that the motion to dismiss be converted into a motion for summary judgment. After a hearing on

---

[1] Dr. Trapp acknowledges that, although he was not a named defendant in the initial complaint, he was given notice of Stringer's claim by letter dated January 5, 2007.

[2] This date is calculated by adding two years and sixty days to the alleged January 11, 2005, discovery date. Miss. Code Ann. § 15-1-36 (Rev. 2003); *see also* **Scaggs v. GPCH-GP, Inc.**, 931 So. 2d 1274, 1276-77 (Miss. 2006) ("the reasonable interpretation of Sections 15-1-36(15) and 15-1-57 requires that the sixty-day notice period may not be used in calculating the statute of limitations, whether notice is given before or during the final sixty-day period of the statute of limitations"). Dr. Trapp argued at the hearing on the motion to dismiss and argues on appeal that the statute of limitations began to run on January 12, 2005, and that the statute of limitations expired on March 13, 2007; however, the variance in his argument does not affect the disposition of this case.

the matter, the circuit court found that no genuine issue of material fact existed as to whether the statute of limitations had run and granted summary judgment in favor of Dr. Trapp. Pursuant to Mississippi Rule of Civil Procedure 54(b), the trial court ruled this a final judgment for the purposes of appeal.

¶8.     Stringer appeals from that order and presents to this Court the questions of (1) whether the trial court erred in holding that the discovery rule did not apply to toll the two-year statute of limitations of Mississippi Code Section 15-1-36, and (2) whether the trial court erred in finding that no genuine issue of material fact existed with regard to the running of the statute of limitations.

## STANDARD OF REVIEW

¶9.     The issue of whether the applicable statute of limitations has run is a question of law. *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1000 (Miss. 2004).  In reviewing the grant or denial of a motion for summary judgment, the standard of review is *de novo*.  *Knight v. Terrell*, 961 So. 2d 30, 31 (Miss. 2007).  If no genuine issue of material fact exists and the moving party is entitled to summary judgment as a matter of law, summary judgment should be entered in that party's favor.  *Id.*  The burden is upon the moving party, and the evidence should be viewed in the light most favorable to the nonmoving party.  *Id.*

## ANALYSIS

¶10.    On appeal, Dr. Trapp contends that the statute of limitations began to run on January 12, 2005, when Stringer discovered she needed an appendectomy rather than a hysterectomy. Stringer asserts that, although she was aware of the potential misdiagnosis on January 12, 2005, the statute of limitations with regard to Dr. Trapp did not begin to run on that date,

4

because she had never met with Dr. Trapp, nor had she been aware of his involvement with her treatment.

¶11. Pursuant to the governing statute, Mississippi Code Section 15-1-36(1), an action for medical malpractice must be brought "within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Miss. Code Ann. § 15-1-36(1) (Rev. 2003). To determine when a plaintiff can be said to have sufficient knowledge to commence the running of the statute of limitations, this Court has espoused the following: "The operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." *Smith v Sanders*, 485 So. 2d 1051, 1052 (Miss. 1986); *see also* ***Huss v. Gayden***, 991 So. 2d 162, 165 (Miss. 2008). Said another way, the statute of limitations is tolled by the discovery rule until the plaintiff (1) has knowledge of the injury, (2) has knowledge of the cause of the injury, and (3) knows the relationship between the practitioner and the injury. *Smith*, 485 So. 2d at 1053.

¶12. The question of whether a statute of limitations is tolled by the discovery rule often turns on the factual determination of "what the plaintiff knew and when." *Huss*, 991 So. 2d at 168. Thus, "[o]ccasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Smith*, 485 So. 2d at 1053.

¶13.   In this case, Dr. Trapp argues that the discovery rule should not apply to toll the statute of limitations, because the plaintiff discovered she had appendicitis, a known nonlatent injury, on January 12, 2005, during emergency surgery.   However, while the latency or nonlatency of an injury *may* be viable issues, they are not in this case.

> [I]n the medical malpractice context, the discovery rule may apply in cases where the injury is not latent at all, but where the negligence which caused the known injury is unknown. For instance, a patient who undergoes a medical procedure may develop serious complications which are clearly known. However, *if the patient has no reason to know that the doctor's negligence in performing the procedure caused the complications, the discovery rule will apply, even though the injury itself is not latent at all.*

*Sutherland v. Estate of Ritter*, 959 So. 2d 1004, 1008-09 (Miss. 2007).

¶14.   The trial court noted in the order granting summary judgment that the present case "seems to be entirely on-point with" *Joiner v. Phillips*, 953 So. 2d 1123 (Miss. Ct. App. 2006).   Yet, upon closer inspection, the distinctions between *Joiner* and this case become obvious. In *Joiner*, Daisy Joiner brought a medical malpractice action against several named defendants and John and Jane Doe defendants for their alleged negligence during and after a surgical procedure.  *Id.* at 1125.  Nearly two years after filing her complaint, the plaintiff substituted a radiologist, Dr. Phillips, and his practice group for the Doe defendants.  *Id.*  The trial judge granted summary judgment in favor of Dr. Phillips and his group, finding that the two-year statute of limitations had run, and the Court of Appeals affirmed.   The Court of Appeals noted that Joiner was "aware that Dr. Phillips had some involvement in her treatment" from the beginning of her treatment, "even if that involvement was only his taking or interpreting x-rays." *Id.* at 1126-27.  The opinion also noted that Joiner did not exercise

6

"due diligence" in investigating her case when she did not request her medical records until nearly two years after her treatment. *Id.* at 1127.

¶15.   Thus, *Joiner* is distinguishable from this case on two primary grounds. First, unlike the present case, Joiner always knew of the radiologist's existence and involvement in her treatment, even if she believed the involvement to be minimal. Second, Joiner did not diligently seek her records.

¶16.   Here, it is undisputed that Dr. Trapp never met with Stringer, and Dr. Trapp makes no assertion that Stringer was made aware of his involvement in her treatment until she received her medical records on April 14, 2005. Moreover, Dr. Trapp concedes that Stringer exercised reasonable diligence in seeking her medical records. Yet the factual questions of "what the plaintiff knew and when" remain unanswered. *Huss*, 991 So. 2d at 168. Accordingly, the trial court erred in dismissing the cause of action against Dr. Trapp at the summary judgment level.

## CONCLUSION

¶17.   The ruling of the trial court granting summary judgment in favor of Dr. Trapp is reversed, and this cause is remanded for proceedings consistent with this opinion.

¶18.   **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER, AND PIERCE JJ., CONCUR.**