KITCHENS, Justice,
dissenting:
¶ 22. Because I disagree with my learned colleagues that reasonable diligence could have led to the discovery of Dr. Johnson’s employment status, I find that the trial court was not in error in denying summary judgment to Hospital MD. I, therefore, respectfully dissent.
¶ 23. The majority is correct that the medical malpractice discovery rule tolls the statute of limitations until the plaintiff “(1) has knowledge of the injury, (2) has knowledge of the cause of the injury, and (3) knows the relationship between the practitioner and the injury.” Stringer v. Trapp, 30 So.3d 339, 342 (Miss.2010) (citing Smith v. Sanders, 485 So.2d 1051,1053 (Miss.1986)). The majority also correctly recognizes that “although a hidden or unseen injury might ... serve to trigger the discovery rule and toll the statute of limitations, it is not because the injury itself is hidden or unknown, but rather because the negligence which caused the injury is unknown.” Sutherland v. Estate of Ritter, 959 So.2d 1004, 1008 (Miss.2007). I agree with the majority that “Larry knew of Dr. Johnson’s relationship to her injury from the start and in fact, sued him individually.” But the majority continues, “it was not the relationship between Dr. Johnson and [Larry’s] injury that Larry was unaware of befoi-e the statute of limitations ran on her claim. Rather, it was Dr. Johnson’s employment status with Hospital M.D.”
¶24. The majority too narrowly restricts the meaning of Stringer’s “relationship between the practitioner and the injury” prong. Larry did not know of Hospital MD’s relationship to her injury until she, with reasonable diligence, learned of Hospital MD’s relationship to Dr. Johnson. Hospital MD, as employer of Dr. Johnson, potentially shared a collective relationship with Dr. Johnson to Larry’s injuries under the doctrine of re-spondeat superior. According to this Court, “an action against an employer based on the doctrine of respondeat superior is a derivative claim arising solely out of the negligent conduct of its employee within the scope of his or her employment.” J & J Timber Co. v. Broome, 932 So.2d 1, 6 (Miss.2006). Additionally, “a suit barred by a statute of limitation against an agent will likewise bar the same claim against the principal whose liability is based solely on the principal and agent relationship.” Lowery v. Statewide Healthcare Serv., Inc., 585 So.2d 778, 779 (Miss.1991).
¶ 25. This Court further has held that “[a]bsent proof of an employment relationship,” the employer, a provider of emergency room physicians, could not be held vicariously liable under the doctrine of re-spondeat superior for alleged medical malpractice of the employee-physician; thus *929 the trial court did not err by granting a directed verdict to the employer. Hartel v. Pruett, 998 So.2d 979, 990 (Miss.2008). Even though, in that ease, insufficient proof was adduced as to the relationship between the employer and the employee-physician, here it is uncontested that Hospital MD employed Dr. Johnson. Hospital MD has not denied employing Dr. Johnson. Because of Hospital MD’s 'potential vicarious liability as employer of Dr. Johnson under the doctrine of respondeat superior, the plaintiffs knowledge of “the relationship between the practitioner and the injury” necessarily includes the relationship of the practitioner’s employer and the injury alleged to have been caused by the practitioner. As such, I agree with Larry that the medical malpractice discovery rule tolled the statute of limitations as to Hospital MD until such time as Larry learned of Dr. Johnson’s employment status with Hospital MD.
¶ 26. The majority finds no evidence in the record “showing Larry did anything more than request her medical records in investigating her claim,” or that “Larry made any inquiry into the employment status of Dr. Johnson.” According to the majority, Larry seemed “simply [to] proceed under the assumption that Dr. Johnson was an employee of KDH.” It is true, as the majority recognizes, that a Plaintiff has “a legal duty to conduct a due-diligence inquiry into the true employment status of potential defendants.” Gorton v. Rance, 52 So.3d 351, 357 (Miss.2011) (citing Ray v. Keith, 859 So.2d 995, 999 (Miss. 2003)). But, in Ray, an accident report clearly revealed the defendant’s employer, and the Court found that “there is no evidence in the record that suggests [plaintiff] made any attempt to determine the employment status of [defendant].” Ray, 859 So.2d at 999 (emphasis added).
¶ 27. Here, the record reflects that the only information regarding Dr. Johnson’s employment with Hospital MD came to Larry in the form of an e-mail from a senior claims consultant for King’s Daughters Hospital’s (KDH) insurer. This email, received on December 9, 2011, provided Larry knowledge that Dr. Johnson was employed by Hospital MD. Larry argues that December 9, 2011, was the date she learned of the relationship of Hospital MD and Dr. Johnson. It is true that a “cc” line of an October 12, 2011, letter from an insurance adjuster named Hospital MD as an additional insured on Dr. Johnson’s insurance policy. But Larry argued in the trial court that the October 12, 2011, communication did not put her on notice of Dr. Johnson’s employment with Hospital MD. She wrote, “this could have been an additional insurer” and “the Mississippi Secretary of State’s Office has no listing for Hospital MD, LLC.” Indeed, even if the statute was tolled only until October 12, 2011, Larry’s suit, filed initially on January 3, 2012, was well within the two-year statute of limitations.
¶ 28. Absent the sudden onset of some irresistible impulse of charity, neither Dr. Johnson nor KDH, who were themselves being sued by Larry at the time, would have been likely to reveal voluntarily Hospital MD as Dr. Johnson’s employer. Further, the record reflects that Hospital MD was not even licensed to do business in the State of Mississippi, and that the listings with the Office of the Secretary of State termed Hospital MD “dissolved.” Thus, even with the exercise of reasonable diligence, Larry’s task of identifying Dr. Johnson’s employer amid an uncountable multitude of healthcare providers in this State, potential employers of Dr. Johnson, remained a practical impossibility. Reasonable diligence certainly could not have connected an out-of-state entity, dissolved in Mississippi, with a physician who, from *930 all outward appearances, worked for the Mississippi hospital at which the plaintiff encountered him. Under the circumstances, therefore, it was reasonable for Larry to pursue her suit under the logical assumption that the hospital where she received treatment from Dr. Johnson was the hospital that employed Dr. Johnson. I deem it patently unfair for this Court to charge Larry with knowledge of information she could not possibly have obtained in the absence of a fortuitous stroke of good luck, and I disagree that the trial judge erred in denying summary judgment to Hospital MD.
¶ 29. No amount of reasonable diligence on the part of Larry would have been likely to reveal the employment relationship between Dr. Johnson and Hospital MD, and thus Hospital MD’s relationship to Larry’s injury. The statute of limitations applicable to her claim against Hospital MD did not begin to run until she learned of its identity and its relationship to Dr. Johnson. I would affirm the trial court’s denial of summary judgment to Hospital MD.
CHANDLER AND KING, JJ., JOIN THIS OPINION.