# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00564-COA

CHRISTIE ROBERSON                                          APPELLANT

v.

AMORY HMA LLC, AMORY HMA PHYSICIAN                        APPELLEES
MANAGEMENT LLC, AND BRIAN McCOY,
M.D.

| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/2018 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER III |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MATTHEW THOMPSON |
| | GREGORY JOHN BOSSELER |
| ATTORNEYS FOR APPELLEES: | DAVID W. UPCHURCH |
| | MARK P. CARAWAY |
| | JOHN MARK MCINTOSH |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 02/25/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND TINDELL, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Justin Shields's mother, Christie Roberson, filed a wrongful-death action in Monroe County, alleging that medical negligence caused Justin's death.  The circuit court granted summary judgment to the Appellees, finding the statute of limitations had run.  Christie now appeals that decision to this Court.

### FACTS AND PROCEDURAL HISTORY

¶2.    On May 13, 2013, Justin[1] complained to his mother, Roberson, that he was having trouble breathing. Worried, Roberson drove Justin to Gilmore Memorial Regional Medical Center (GMRMC) in Amory, Mississippi. At the hospital, Justin explained to the emergency-room nurse that he "hurt all over" and thought he had the flu. He also stated he had pain in his left ankle but that he had been helping his grandfather move furniture earlier in the week. The nurse relayed her assessment to Dr. Brian McCoy, the physician primarily responsible for Justin's care. Dr. McCoy performed a physical exam on Justin, including a Homan's sign test on his left ankle.[2] Justin's medical records recalled no deformity, swelling, discoloration, or abrasions to the ankle. So Dr. McCoy determined the cause of the left-ankle pain to be musculoskeletal pain. In addition, Dr. McCoy ordered Justin to undergo a flu test and chest x-ray. The flu-test results were negative, but Justin's chest x-ray revealed some abnormality. Dr. McCoy stated that the abnormality potentially indicated a chest infection. As a result, Dr. McCoy gave Justin a Toradal for his pain and antibiotics to combat the possible infection. Justin was then discharged from the hospital.

¶3.    Four days later, on May 17, 2013, Justin went into full cardiac arrest at his home. EMS personnel transported Justin back to GMRMC. Justin was declared dead upon arrival at 4:45 a.m. An autopsy was ordered by the Monroe County Coroner, Alan Gurley.

¶4.    The next day, on May 18, 2013, Mississippi State Medical Examiner Dr. Brent Davis

---

[1] Justin was twenty years old with a significant medical history of multiple psychiatric diagnoses, including autism.

[2] According to Dr. McCoy's deposition testimony, the Homan's sign test is "used sometimes" to evaluate for a deep vein thrombosis. However, the test cannot "completely" rule out a deep vein thrombosis.

performed the autopsy. According to Coroner Gurley's deposition transcript, Dr. Davis called him the same day the autopsy was performed to inform him that Justin had died from a blood clot in his leg. Coroner Gurley further testified that he "immediately" called Roberson to advise her of what he had learned from Dr. Davis. However, according to Roberson, Coroner Gurley refused to tell her anything concerning the results of the autopsy until the official autopsy report was released.

¶5. Justin's funeral was held in Amory on May 20, 2013, three days after his death. The death certificates ordered by Roberson were received by the funeral home on May 28, 2013. Roberson testified that she retrieved the death certificates from the funeral home "about a week" or "a week and a half" after the funeral. In her brief to this Court, Roberson listed May 30, 2013, as the date she received the death certificates. The Appellees contend it was either May 28 or May 30, 2013. Once she received the certificates, Roberson testified that she "immediately" read the cause of death on the death certificate, which listed "pulmonary thromboembolism" as the cause of death and an "enlarged heart" as an "other significant condition." Roberson also testified that she became "critical" of Dr. McCoy at the time she learned Justin died from a blood clot.

¶6. On June 19, 2013, Roberson received the official autopsy report. The report stated that Justin died from a deep vein thrombosis (DVT) in his leg that resulted in a pulmonary embolism—a blood clot in his lungs. The details of the report listed pathologic diagnoses of (1) pulmonary thromboembolism: pulmonary vasculature with thromboembolic material; (2) deep venous thrombosis of a right iliac vein; pulmonary congestion and edema; (3)

3

hypertensive cardiovascular disease: cardiomegaly (520 grams); and (4) cholesterolosis of the gallbladder.

¶7. On April 29, 2015, one year, eleven months, and twelve days after Justin's death, Roberson, as representative of Justin's wrongful-death beneficiaries, sent a mandatory pre-suit notice letter to Dr. McCoy. On May 6, 2015, one year, eleven months, and nineteen days after Justin's death, Roberson sent a second pre-suit notice letter to the hospital groups. On August 7, 2015, Roberson filed a wrongful-death action against Dr. McCoy, Amory HMA LLC, and Amory HMA Physician Management LLC. Amory HMA and Amory HMA Physician Management filed their "Separate Answers and Defenses" on December 28, 2015. Dr. McCoy filed his answer on January 4, 2016.

¶8. Nearly a year and a half later, Dr. McCoy moved for summary judgment on two grounds: (1) Roberson "failed to identify the facts and opinions of a qualified and competent medical expert" to establish a prima facie case for negligence, and (2) Roberson's claims were time-barred by the applicable statute of limitations. According to Dr. McCoy, the two-year limitations period under Mississippi Code Annotated section 15-1-36(2) (Rev. 2012) commenced on May 17, 2013, the day of Justin's death, "or at the latest, on May 30, 2013," because that was when "Roberson discovered the cause of action." Amory HMA and Amory HMA Physician Management filed a "Combined Motion and Memorandum" for summary judgment with Dr. McCoy. Roberson responded to the motions and attached an affidavit from Dr. Daniel Abbott. According to Dr. Abbott, "The patient's family could not have known the cause of death prior to receipt of the final autopsy report [because] it is extremely

4

difficult, if not impossible, to determine the existence of medical negligence without knowing the specific cause of death."

¶9. On March 20, 2018, the circuit court granted both Dr. McCoy's motion for summary judgment and Amory HMA and Amory HMA Physician Management's combined motion for summary judgment on statute-of-limitations grounds. The court found the limitations period commenced "at the latest" on May 30, 2013, the date Roberson should have first discovered the negligence, and that Roberson's complaint was "time-barred [under] Mississippi Code Annotated [section] 15-1-36." The court calculated the limitations date, extending it sixty additional days since Roberson followed section 15-1-36(15)'s pre-suit mandate. *See Proli v. Hathorn*, 928 So. 2d 169, 174 (¶18) (Miss. 2006) (holding that "the time period is *extended* [by sixty days], not tolled, pursuant to the language of Miss. Code Ann. § 15-1-36(15)"); *see also Pope v. Brock*, 912 So. 2d 935, 938 (¶15) (Miss. 2005) ("Since Pope originally had two years to file suit under Section 15-1-36(2), and since Pope was prohibited by law from filing suit for the sixty-day period, a literal application of the wording of the statute results in a statute of limitations period of two years and sixty days." (internal quotation marks omitted)). Therefore, the court ruled the limitations period expired on July 29, 2015. As such, Roberson's August 7, 2015 claim was nine days late. Now, Roberson appeals to this Court, claiming summary judgment was granted in error. We affirm the circuit court's decision.

## STANDARD OF REVIEW

¶10. Rule 56(c) of the Mississippi Rules of Civil Procedure provides that a motion for

5

summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). This Court reviews a decision granting or denying summary judgment de novo. *Tobias v. Univ. of Miss. Med. Ctr.*, No. 2018-CA-00502, 2019 WL 4633120, at *1 (¶5) (Miss. Ct. App. Sept. 24, 2019) (citing *Hubbard v. Wansley*, 954 So. 2d 951, 956 (¶9) (Miss. 2007)). The same standard governs the application of the statute of limitations. *Sarris v. Smith*, 782 So. 2d 721, 723 (¶6) (Miss. 2001). That said, the evidence is viewed in the light most favorable to the non-moving party. *Massey v. Tingle*, 867 So. 2d. 235, 238 (¶6) (Miss. 2004). However, "[t]he non-moving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts that there are genuine issues for trial." *Id.*

## DISCUSSION

¶11. In granting the Appellees' summary judgment motions, the circuit court found the statute-of-limitations period commenced "at the latest" on May 30, 2013. Roberson contends on appeal, however, that she reasonably failed to discover the full scope of the Appellees' negligence until she received her son's autopsy report on June 19, 2013, pushing the claim's expiration date forward to August 18, 2015. In the alternative, Roberson asserts that material questions of fact still exist, and thus the question of whether her complaint was timely filed "should be resolved by a jury."

¶12. A two-year statute-of-limitations period applies to claims for injuries arising from

6

medical malpractice. Miss. Code Ann. § 15-1-36(2); *see also Pollan v. Wartak*, 240 So. 3d

1185, 1192 (¶17) (Miss. 2017). As our supreme court has explained:

> The focus of Section 15-1-36(2) is upon the time that the patient discovers, or
> should have discovered by exercise of reasonable diligence, that he probably
> has an actionable injury. Thus, the statute of limitations does not begin to run
> until the plaintiff (1) has knowledge of the injury, (2) has knowledge of the
> cause of the injury, and (3) knows the relationship between the practitioner and
> the injury. Applying this standard, this Court has focused on when a plaintiff,
> exercising reasonable diligence, should have first discovered the negligence,
> rather than the injury.

*Pollan*, 240 So. 3d at 1192 (¶17) (citations and internal quotation marks omitted). The

statute also has a built-in discovery rule: the two-year period begins "from the date the

alleged act, omission or neglect shall or with reasonable diligence might have been first

known or discovered . . . ." Miss. Code Ann. § 15-1-36(2). The party asserting a statute-of-

limitations defense has the burden of proving it. *Smith v. Sanders*, 485 So. 2d 1051, 1053

(Miss. 1986).

¶13.    Both parties agree that in medical-malpractice actions, "we must focus our inquiry on

when a plaintiff, exercising reasonable diligence, *should have first discovered the negligence*,

rather than the injury." *Sutherland v. Estate of Ritter*, 959 So. 2d 1004, 1008 (¶12) (Miss.

2007) (emphasis added); *see also Waldrup v. Eads*, 180 So. 3d 820, 827-28 (¶33) (Miss. Ct.

App. 2015). Roberson argues that she discovered Dr. McCoy's alleged negligence on the

date she received her son's official autopsy report, which was one month and two days after

Justin's death. Roberson also attached an affidavit from Dr. Abbott that stated:

> The patient's family could not have known the cause of death prior to receipt
> of the final autopsy report and in my opinion, in all but the simplest cases
> (usually with visible, external injury), it is extremely difficult, if not

7

impossible, to determine the existence of medical negligence without knowing the specific cause of death.

But the statute is not automatically tolled while waiting on an autopsy report. Instead, the focus is on the first time Roberson, having exercised reasonable diligence, should have discovered that Dr. McCoy had been medically negligent. *See Sutherland*, 959 So. 2d at 1008 (¶12).

¶14. In a similar case, this Court questioned whether or not a claimant could have reasonably discovered a physician's medical negligence before she learned of her mother's official cause of death. *Waldrup*, 180 So. 3d at 827 (¶35). There, the claimant argued that she could not have known of the medical negligence until she received the autopsy report. *Id.* This Court disagreed with the claimant and found that she "could not rely on the later autopsy report to keep the two-year limitations period from beginning." *Id.* at (¶37). Rather, the autopsy report *confirmed* the claimant's suspicion that the physician's negligence attributed to her mother's death—"[y]et it did not reveal any act, omission, or neglect by [the physician] that would not have been otherwise known or suspected." *Id.*

¶15. In another case, a claimant experienced severe negative side effects from a drug he was prescribed. *Sutherland*, 959 So. 2d at 1005-06 (¶¶2-4). Two years after his diagnosis, the claimant filed a medical-negligence suit against his prescribing physician. *Id.* at 1006 (¶5). Our supreme court, focusing on when the claimant "should have first discovered the negligence, rather than the injury," found that his own immediate suspicions and pre-diagnosis actions to combat the drug's effects were enough to trigger the two-year statute of limitations. *Id.* at 1008-09 (¶¶12-16). Ultimately, the supreme court affirmed the circuit

8

court's dismissal, finding his suit untimely. *Id.* at 1010 (¶18).

¶16.  Turning to our case, Roberson similarly could not rely on the autopsy report to keep the two-year limitations period from beginning. Similar to *Waldrup* and *Sutherland*, and like the circuit court here, we find that Justin's death certificate and autopsy report *confirmed* Roberson's suspicions that Dr. McCoy's negligence may have attributed to her son's death. The record indicates that Roberson was with Justin and Dr. McCoy at the initial hospital visit on May 13, 2013. Further, the record shows that Roberson was at the hospital at the time Justin was pronounced dead on May 17, 2013. Roberson received Justin's death certificate on or a couple of days before May 30, 2013. At that time, Roberson testified that she "immediately" read the death certificate and learned that Justin died from a "pulmonary thromboembolism"—a blood clot in the lungs.[3]

¶17.  Roberson received Justin's official autopsy report three weeks after acquiring Justin's death certificate. The autopsy report, which was more detailed than the death certificate, revealed that Justin died from a DVT in his leg that resulted in a pulmonary embolism—a blood clot in his lungs. That said, we recognize the death certificate failed to mention Justin's DVT, but our law instructs us to look to "when a plaintiff, exercising reasonable diligence, *should have first discovered the negligence*, rather than the injury." *Id.* at 1008 (¶12) (emphasis added); *see also Waldrup*, 108 So. 3d at 827-28 (¶33). Further, Roberson and Coroner Gurley testified that Justin's sudden death on May 17, 2013, was surprising

---

[3] We do not reach our decision based on Coroner Gurley's May 18, 2013 statement that he told Christie that Justin died from a blood clot in his leg, as Roberson disputes she received that information. As such, whether or not she was aware at that time is a disputed issue of fact, making summary judgment on that information improper.

given his young age. In fact, Roberson agreed to have an autopsy performed in order to determine Justin's exact cause of death. Reviewing the facts in the light most favorable to the non-movant, Roberson discovered that Justin died from an undiagnosed blood clot on May 30, 2013, confirming her suspicions that Dr. McCoy may have been medically negligent in his care for her son. We therefore agree with the circuit court that, as of May 30, 2013, Roberson "knew or reasonably should have known" of Dr. McCoy's alleged negligence as the autopsy report did not reveal any act, omission, or neglect by Dr. McCoy that would have been otherwise known or suspected. *Id.* at (¶37).

¶18.    In the alternative, Roberson argues that a jury should be allowed to resolve the question of when the statute of limitations commenced. The application of the statute of limitations is a question of law. *Stringer v. Trapp*, 30 So. 3d 336, 341 (¶9) (Miss. 2010). "Occasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Sanders*, 485 So. 2d at 1053. To support her contention, Roberson points to *Pollan v. Wartak*, 240 So. 3d 1185 (Miss. 2017).

¶19.    In *Pollan*, the claimant's mother's brain was flooded with IV fluids during her admission at NMMC-West Point, which ultimately caused her death. *Id.* at 1192 (¶18). On appeal, Pollan argued the trial court misapplied the discovery rule in section 15-1-36 because discovery of the injury required a medical diagnosis, "not merely a suspicion as to the condition or its causation." *Id.* at 1192-93 (¶18). Unpersuaded by Pollan's argument, our

supreme court reaffirmed that the mother knew or at least suspected that her cognitive deficiencies were the result of her blood-sodium levels being corrected too quickly during her admission at NMMC-West Point. *Id.* at 1195 (¶25). "[T]hese suspicions, coupled with the numerous other references in [the mother's] medical records to rapid sodium correction and [central pontine myelinolysis], were sufficient to commence the running of the statute of limitations." *Id.* As a result, the court held "reasonable minds could not differ to when [the mother] knew of her injury, the cause of the injury, and the relationship between the defendants and the injury." *Id.*

¶20. In affirming the grant of summary judgment based on the running of the statute-of-limitations period, we remain mindful that the application of the discovery rule is a "fact-intensive process." *Huss v. Gayden*, 991 So. 2d 162, 166 (¶6) (Miss. 2008). And "when a valid factual dispute exists, the issue [must be] settled by the finder of fact, a jury." *Id.* But here there is no material factual dispute on the record before us. According to Roberson's deposition testimony, Roberson stated that she became "critical" of Dr. McCoy on the day she learned that Justin died from a blood clot. That day was May 30, 2013. Thus, the circuit court correctly held the discovery rule did not toll the statute of limitations for the month and two days that Roberson was waiting on the autopsy report. *See id.* at 167 (¶9) ("[A]n individual may not take shelter in the 'discovery rule' when reasonable minds could not differ that the plaintiff possessed sufficient information to bring a claim."). Accordingly, we find that Roberson's claim that a jury should resolve when the statute-of-limitations period commenced is without merit.

## CONCLUSION

¶21. Because we find the applicable statute of limitations bars Roberson's medical-negligence claim, we affirm the circuit court's grant of summary judgment to the Appellees.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., NOT PARTICIPATING.**