552 So.2d 121 (1989)
Meda H. PARHAM
v.
B.O. MOORE, M.D.
No. 07-58437.
Supreme Court of Mississippi.
November 8, 1989.
Douglas M. Wright, Tupelo, for appellant.
Thomas A. Wicker and Robert K. Upchurch, Holland, Ray & Upchurch, Tupelo, for appellee.
En banc.

ON PETITION FOR REHEARING
ANDERSON, Justice, for the Court:
On Petition for Rehearing the original opinion is withdrawn and this opinion substituted therefor.
In this medical malpractice action, the plaintiff/appellant, Meda Parham, appeals the trial court's grant of summary judgment in favor of the defendant/appellee, Dr. B.O. Moore. Finding one of Parham's two alternative claims meritorious, we reverse and remand.

I.
On or about December 30, 1981, Parham twisted her back while cleaning her house after the Christmas holiday. Five days later, on January 4, 1982, she went to see Dr. Moore, a general or family practitioner, who had been Parham's doctor since 1968, complaining of pain the region of her left hip and leg. Parham saw Dr. Moore a total of four times between January 4, and April 8, 1982. On April 8, Parham was complaining of weakness in her left leg and ankle as well as continued pain. Dr. Moore referred her to an orthopedic surgeon in Columbus. On April 19, 1982, the orthopedic surgeon made a preliminary diagnosis of a possible ruptured disc and recommended neurosurgical evaluation.
On April 22, 1982, Parham saw Dr. Thomas McDonald, a Tupelo neurosurgeon. Dr. McDonald hospitalized Parham and the next day a myelogram was performed which indicated a need for disc surgery. Surgery was performed on April 26, 1982. Two herniated, ruptured lumbar discs were removed. According to Parham, Dr. McDonald spoke with her after the surgery and indicated that he was surprised that *122 she had been able to withstand the pain because the bones had been pressing against the nerves in her back. In an affidavit, Dr. McDonald averred that after the operation he advised Parham that she would "probably regain the use of her leg, but that it would take eighteen months or so for the healing process to be completed." Dr. McDonald further averred that Parham underwent therapy until approximately March 21, 1983; that, in his opinion her paralysis is permanent; and, that the paralysis was "due to continued nerve pressure from the herniated discs over a period of time." Dr. McDonald concluded:
It takes at least eighteen months for nerve regeneration to reach completion in this type of case. It would not be possible to state with certainty whether or not Mrs. Parham's injury was permanent until eighteen months to two years after her surgery was performed.
In June, 1983, Dr. McDonald referred Parham to Campbell Clinic in Memphis, Tennessee, for further evaluation concerning her continued paralysis. The object of the evaluation was to rule out other possible causes of the paralysis. On July 1, 1983, Parham saw Dr. Michael DeShazo, a neurologist, in order to determine whether she had suffered a stroke. Dr. DeShazo determined that she had not. Dr. DeShazo's records, concerning his consultation with Parham, indicate that Parham told him that "she began to have difficulty with her left leg getting weak in June of 1982." This would have been two months after the disc surgery. Parham maintained that her leg became useless sometime before her surgery and that after the surgery it did not change; it got neither worse, nor better. Dr. DeShazo also opined that it would take twelve to eighteen months after disc surgery such as Parham's to determine whether any nerve damage would be permanent.
On April 24, 1984, Parham filed her complaint in the Monroe County Circuit Court against Dr. Moore alleging medical malpractice in the form of failure to diagnose, failure to refer to a specialist, and general medical negligence. The injury complained of was the permanent partial paralysis of her left leg. Dr. Moore answered and alleged as an affirmative defense that the two-year statute of limitations barred Parham's suit.
While suit was filed on April 24, 1984, service of process was held until November 1, 1984. In an April 23, 1984, letter to the Monroe County Circuit Clerk, accompanying her complaint, Parham's attorney wrote: "We are attempting to settle this claim, but are required to file in order to avoid the running of the statute of limitations. We would appreciate your withholding the service of process until further notification."
On December 12, 1985, the trial court granted Dr. Moore's motion for summary judgment, finding that Parham knew or should have known of any causal connection between her alleged injuries and the treatment rendered by Dr. Moore on or before April 25, 1982. The trial court also determined that Parham's cause of action did not commence until November 1, 1984, when process was issued.
On appeal, Parham first argues that her cause of action accrued no earlier than April 26, 1983, because she could not have determined that she had a compensable injury until at least twelve months following her surgery. If April 26, 1983, is the date on which Parham's cause of action accrued, then her suit was filed well within the two-year statute of limitations whether the action was commenced on April 24, 1984, or November 1, 1984. Parham's alternative argument is that the action commenced on April 24, 1984, when the complaint was filed rather than on November 1, 1984, when process was issued. We need not address Parham's alternative argument, as we hold that her cause of action against Dr. Moore accrued on or after April 26, 1983.

II.

STANDARD OF REVIEW
As we recently reiterated in Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61 (Miss. 1988):
This Court conducts de novo review of a lower court's grant of summary judgment. *123 Pearl River County Bd. of Supervisors v. South East Collections Agency, Inc., 459 So.2d 783, 785 (Miss. 1984). "The general standard that an appellate court applies in reviewing the grant or denial of a summary judgment motion is the same as that employed by the trial court initially under Rule 56(c)." 10 Wright, Miller and Cain, Federal Practice and Procedure, § 2716 (1983 and Supp. 1988).
The law governing the grant or denial of a motion for summary judgment is familiar and well-established. [citation omitted] In Dennis v. Searle, 457 So.2d 941 (Miss. 1984), we explained:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and the other says the opposite.
457 So.2d at 944.
In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the nonmovant should be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1055 (Miss. 1986).
Short v. Columbus Rubber & Gasket, 535 So.2d at 63-64.

III.

DID DR. MOORE MEET HIS BURDEN OF DEMONSTRATING THAT NO GENUINE ISSUE OF FACT EXISTS CONCERNING WHEN THE STATUTE OF LIMITATIONS BEGAN TO RUN IN THE INSTANT CASE?
Section 15-1-36, Mississippi Code Annotated, (Supp. 1988), in pertinent part provides:
No claim in tort may be brought against a licensed physician, ..., for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered... .
We have held that the two-year statute of limitations does not commence running until the patient discovers or should have discovered that he has a cause of action. Kilgore v. Barnes, 508 So.2d 1042, 1044 (Miss. 1987); Smith v. Sanders, 485 So.2d 1051, 1052 (Miss. 1986); Pittman v. Hodges, 462 So.2d 330 (Miss. 1984). In Smith v. Sanders, supra, we explained:
The focus is upon the time that the patient discovers, or should have discovered by the exercise of reasonable diligence that he probably has an actionable injury. The operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury and the causative relationship between the injury and the conduct of the medical practitioner.
Smith v. Sanders, 485 So.2d at 1052.
In Smith v. Sanders, we reversed the trial court's grant of summary judgment in favor of the defendant physician, where the evidence offered in support of the summary judgment motion indicated that the plaintiff knew, within the limitations period, "of the act or omission which he alleged caused him injury," but the evidence did not indicate when the patient first discovered or with reasonable diligence should have discovered "that he was injured or damaged by the act or omission." Id., at 1084.
Only when the patient discovered or should have discovered with reasonable diligence that he had been injured or damaged because of the failure to [perform a necessary surgical procedure] did he have sufficient knowledge to be aware of the fact that he had a cause of action.
In Pittman v. Hodges, 462 So.2d 330 (Miss. 1984), the plaintiff sued the defendant *124 dentist alleging that as a result of the defendant's malpractice, his lip and part of his face were permanently numb. The trial court overruled the defendant's motion for summary judgment on the statute of limitations issue and the defendant appealed. The plaintiff underwent oral surgery on October 16, 1978. On October 23, 1978, the plaintiff returned for some follow-up work and complained of numbness in his lip. On November 27, 1978, the plaintiff returned to the oral surgeon for some previously overlooked follow-up procedures and once again complained of the numbness. The dentist told the plaintiff the numbness might last from two to six weeks or perhaps as long as six months to a year.
On appeal, the defendant in Pittman argued that the statute of limitations was triggered no later than November 27, 1978.
We noted that on that date the permanence of the numbness was unknown or unpredictable.
In our view, [the plaintiff] was entitled to rely upon [the defendant's] statements that the numbness would temporarily last from two to six weeks or even longer, and only thereafter could [the plaintiff] then by the exercise of reasonable diligence have known or discovered that his numbness was permanent and would not go away.
* * * * * *
In summary, the essence of the injury to [the plaintiff] was the permanent nature of the numbness which could not reasonably be discovered until the period of temporary numbness described by [the defendant] has passed. At the very least, this period was from two to six weeks, and if the minimum figure of two weeks was added to November 27, 1978, then this suit was timely filed within two years following the very earliest date at which [the plaintiff] could reasonably have discovered the permanent numbness resulting from [the defendant's] treatment.
In the instant case, Dr. McDonald told Parham, on the day of her surgery, April 26, 1982, that it would take 18 months or so for the healing process to be completed. In Dr. McDonald's opinion it would take 18 months to two years following the surgery to determine whether the partial paralysis of Parham's left leg would be permanent. According to Dr. DeShazo, the minimum recuperative period would be 12 months. Therefore, the earliest date at which Parham could have known or with reasonable diligence discovered that she had a compensable injury was April 26, 1983, or 12 months following her surgery. Nothing in the record suggests that any other doctor could have or would have told Parham that she was going to suffer permanent partial paralysis of her left leg as the result of prolonged pressure on the nerves in her spinal column any earlier than 12 months after surgery. In other words, Dr. Moore failed to offer any proof to support his position that Parham could have discovered that her leg would be permanently partially paralysized prior to the end of the recuperative period.
While expressing no opinion on the merits of this suit, on the record before us it is entirely possible that the limitations period did not begin to run until April 26, 1983. On the other hand, because the issue was neither raised nor litigated nor decided below, we may not hold as a matter of law that Parham should not with reasonable diligence have known of or discovered the act, omission or neglect before April 24, 1982.
Justice Sullivan has written in Smith v. Sanders, 485 So.2d 1051 (Miss. 1986)  the proverbial "case on all fours"  and has well described the course we should take.
Obviously a directed verdict may be available to the doctor at the conclusion of the patient's case if the evidence introduced shows that the patient had constructive knowledge of an injury two years before he filed his suit. If not then, a directed verdict or peremptory instruction may be available if the doctor shows such in the presentation of his case. The tests are the same; however, the evidence the judge has before him in making the determination may be different. In this case, the trial judge did not have before him evidence which showed *125 that there was no genuine issue of fact as to when Smith discovered that he had an injury which was caused by the alleged negligence of Dr. Sanders, and that Sanders was entitled to judgment as a matter of law.
Smith, 485 So.2d at 1055. The Court then found error in the granting of summary judgment below and remanded for trial. Kilgore v. Barnes, 508 So.2d 1042 (Miss. 1987) is to like effect. After holding summary disposition improper, Kilgore remanded "for such further proceedings as may be appropriate." 508 So.2d at 1046.
The court below erred in granting summary judgment for Dr. Moore. We remand for such further proceedings as may be appropriate had Moore's motion for summary judgment been denied. This leaves open for trial the factual question of when Parham with reasonable diligence might have first known or discovered the alleged act, omission or neglect. See Beacon Enterprises v. Menzies, 715 F.2d 757, 768 (2d Cir.1983).
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.