991 So.2d 162 (2008)
Barbara HUSS and Rodney Huss
v.
John Overton GAYDEN, M.D. and Memphis Obstetrics and Gynecological Association, Inc.
No. 2007-FC-02165-SCT.
Supreme Court of Mississippi.
September 25, 2008.
*163 Jenny M. Virden, John H. Daniel, III, Greenville, Ralph E. Chapman, Clarksdale, attorneys for appellants.
Mark P. Caraway, Jackson, Meta S. Copeland, attorneys for appellees.
EN BANC.
RANDOLPH, Justice, for the Court.
¶ 1. This is a certified question from the United States Court of Appeals for the Fifth Circuit. The underlying facts and legal proceedings were aptly summarized by the Fifth Circuit in Huss v. Gayden, 508 F.3d 240, 242-44 (5th Cir.2007), and do not bear repeating. Pursuant to Mississippi Rule of Appellate Procedure 20(a), this Court accepts the following certified question:
[w]hen the alleged negligence is (1) administration of a drug by a physician, or (2) failure to disclose what a reasonable practitioner would have disclosed about the risks of a drug, and experts disagree as to whether the drug caused the plaintiff's injuries, is the date that the alleged act, omission or neglect might, with reasonable diligence, have been first known or discovered by the plaintiff the date *164 her condition or illness is diagnosed by non-defendant physicians or experts, or the date the pertinent facts are available in medical records, or is limitations tolled until one in a series of physicians or other experts the plaintiff consults first tells her that the drug caused her condition or illness?[[1]]
Id. at 241-42.

CERTIFICATION
¶ 2. Mississippi Rule of Appellate Procedure 20(a) provides, in part, that:
[w]hen it shall appear to the ... United States Court of Appeals that there may be involved in any proceeding before it questions or propositions of law of this state which are determinative of all or part of that cause and there are no clear controlling precedents in the decisions of the Mississippi Supreme Court, the federal court may certify such questions or propositions of law of this state to the Mississippi Supreme Court....
Miss. R.App. P. 20(a) (emphasis added). The rule further states that "[t]he Supreme Court may, in its discretion, decline to answer the questions certified to it." Id. This Court finds itself in a bit of a quandary, for in some respects we agree with the panel dissent that there is "no ambiguity in the case law that warrants certification." Huss, 508 F.3d at 249 (Higginbotham, J., dissenting). Notwithstanding that conclusion, out of comity and respect for the judges of the Fifth Circuit who seek our input, this Court humbly offers the following response to their inquiry.

RESPONSE
¶ 3. The illusion of uncertainty[2] and tension described by the panel majority regarding our Court's application of Mississippi Code Annotated Section 15-1-36 is produced by factual distinctions, rather than conflicting interpretations of the same controlling law. Statutes of limitation reflect the legislative decision to extinguish a remedy, if a claim is not filed within a prescribed period. Unfortunately for Mississippi courts analyzing the statute of limitations in the medical-malpractice genre of cases, determining the commencement of the statute is seldom a mechanical or routine task.[3] Given the inherent complexity of many medical-malpractice cases, the commencement date of the legislatively-enacted limitations period requires a case-by-case analysis. See Sarris v. Smith, 782 So.2d 721, 725 (Miss.2001).
¶ 4. Additionally, identifying the commencement and expiration dates of the statute of limitations is only part of the equation. When a plaintiff brings suit, a defendant is obligated to affirmatively assert a statute-of-limitations defense, in order *165 to receive its benefit. See Miss. R. Civ. P. 8(c) ("[i]n pleading to a preceding pleading, a party shall set forth affirmatively... statute of limitations ... and any other matter constituting an avoidance or affirmative defense."); Fed.R.Civ.P. 8(c)(1) ("[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including ... statute of limitations[.]"). While the obvious benefit of this affirmative defense is sought procedurally, its effect (i.e., extinguishing the remedy) is a substantive right to which Mississippi law applies. Under Mississippi law, the plea of statute of limitations is an affirmative defense for which the party asserting it has the burden of proof. See Smith, 485 So.2d at 1053 (citations omitted); Natchez Electric v. Johnson, 968 So.2d 358, 361 (Miss.2007). The panel dissent observed:
[t]he defendants requested no jury instruction regarding limitations and did not argue before the jury that the Husses had sufficient knowledge to trigger the running of the statute of limitations; rather, they argued causation, that not even the defendant doctors could have known whether Terbutaline caused, or could have caused, Huss's condition  an idiopathic phenomenon. As the magistrate judge noted in rejecting defendants' post-judgment motion, which raised the statute of limitations defense, "[the] defendants failed to establish the approximate date on which the statute of limitations began to run" because "there was no proof of the date by which plaintiff knew or should have known [that Terbutaline was probably the cause of her injury and that her physicians should not have given her the drug]." Having chosen not to pursue the statute of limitations at trial and, therefore, having failed to develop evidence on the defense, defendants make the tendentious request that this court conclude as a matter of law that the defense, which is by its very nature a fact driven inquiry, bars Huss's claim.
Huss, 508 F.3d at 248-49 (Higginbotham, J., dissenting). The success vel non of this disputed affirmative defense requires a jury determination, but only if actually presented. Under Mississippi law, Gayden's failure to establish factually the proof necessary to be accorded the protection created by this substantive right, precludes Gayden from prevailing upon it as a matter of law. This substantive issue should not be confused with the separate procedural issue of whether the defense is raised, preserved or should be barred, all of which are controlled by federal procedural law.
¶ 5. Under either subsection (1) or (2) of Mississippi Code Annotated Section 15-1-36, a medical-malpractice action must be "filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Miss.Code Ann. § 15-1-36(1) & (2) (Rev.2003). In passing Mississippi Code Annotated Section 15-1-36, the Legislature shortened the limitation period for bringing a medical-malpractice suit, but adopted a "`discovery' standard" for triggering the running of the statute. Sweeney v. Preston, 642 So.2d 332, 333 (Miss. 1994). Under the "discovery rule," which tolls the statute of limitations, see Sarris, 782 So.2d at 724, the central inquiry is:
the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury. The operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner.

*166 There may be rare cases where the patient is aware of his injury prior to the two years immediately preceding the filing of his claim, but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.
Smith, 485 So.2d at 1052-53 (emphasis added). In Sutherland, this Court recently focused the inquiry "on when a plaintiff, exercising reasonable diligence, should have first discovered the negligence, rather than the injury." Sutherland, 959 So.2d at 1008 (emphasis added). There, the plaintiff admitted knowledge of the injury, and this Court found that:
[i]n applying the unambiguous language of Miss.Code Ann. § 15-1-36(2), although a hidden or unseen injury might very well serve to trigger the discovery rule and toll the statute of limitations, it is not because the injury itself is hidden or unknown, but rather because the negligence which caused the injury is unknown. Furthermore, in the medical malpractice context, the discovery rule may apply in cases where the injury is not latent at all, but where the negligence which caused the injury is unknown. For instance, a patient who undergoes a medical procedure may develop serious complications which are clearly known. However, if the patient has no reason to know that the doctor's negligence in performing the procedure caused the complications, the discovery rule will apply, even though the injury itself is not latent at all.
Id. at 1008-09 (emphasis added). This Court has consistently utilized the aforementioned application of the "discovery rule." As the panel dissent noted, "Sutherland and the other case law reflect that all three factors are involved when applying the discovery rule...." Huss, 508 F.3d at 250 (Higginbotham, J., dissenting).
¶ 6. "Application of the discovery rule is a fact-intensive process." Sarris, 782 So.2d at 725. See also PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 51 (Miss.2005). Of particular import, this Court has stated that:
"the question of what knowledge should put a claimant on notice of the existence of a viable claim is not soluble by any precise formula." [Waits v. United States, 611 F.2d 550, 552 (5th Cir.1980)]. Some plaintiffs might need medical records in order to know of negligent conduct, and yet might still be barred if they failed to diligently seek those records. Others might gain actual knowledge of negligent conduct through personal observation or other means; such plaintiffs are not entitled to wait until they have medical records before the statute begins to run.
Sarris, 782 So.2d at 725. In determining the applicability of the "discovery rule," a review of Mississippi cases reveals the existence of dissimilar factual patterns which prevent application of a rote formula, despite adherence to the statutory language. Thus, the "uncertainty" and "tension" alluded to by the panel majority is not a product of the alteration of settled principles, but rather driven by diversity of facts. Ipso facto, not all medical-malpractice cases are subject to summary treatment, especially if the operative facts are disputed. See Smith, 485 So.2d at 1053. Thus, in Mississippi, when a valid factual dispute exists, the issue is settled by the finder of fact, a jury. It is only when reasonable minds cannot differ that it becomes settled as a matter of law. See footnote 3 supra.
¶ 7. Other actions can toll the statute. For instance, the statute of limitations can be tolled when an individual is aware of a *167 wrongful act or omission, but unaware, in the exercise of reasonable diligence, of the injury itself. See Smith, 485 So.2d at 1054 ("the patient knew of the act or omission which he alleged caused him injury. However, there is nothing in the record that shows when he first discovered with reasonable diligence, that he was injured or damaged by the act or omission."). The "discovery rule" also can apply when an individual has knowledge of the injury, but cannot by reasonable diligence determine its cause and/or the resulting causative relationship. See Sarris, 782 So.2d at 724 ("while Sarris knew that her husband was dead, under the facts of this case, she could not reasonably have known that the death was the result of negligence.") (emphasis added); Barnes v. Singing River Hosp. Sys., 733 So.2d 199, 206 (Miss.1999) (a Mississippi Tort Claims Act case in which this Court found that "[w]hile the Barneses may have been aware of Lisa's injuries before the one year time limit was up, they could not reasonably have known that Singing River was responsible for those injuries until their medical expert notified them of the possible negligence....").
¶ 8. Likewise, in a slightly different vein, the statute of limitations can be tolled when an individual reasonably relies upon a physician's estimate and/or opinion as to recovery and/or risk. See Neglen v. Breazeale, 945 So.2d 988, 991 (Miss.2006) ("[u]nder these circumstances, we cannot conclude as a matter of law that Lillian did not act diligently by trusting the doctors' opinions and waiting over two years before requesting James' medical records."); Parham v. Moore, 552 So.2d 121, 124 (Miss.1989) ("[a]ccording to Dr. DeShazo, the minimum recuperative period would be 12 months. Therefore, the earliest date at which Parham could have known or with reasonable diligence discovered that she had a compensable injury was ... 12 months following her surgery."); Pittman v. Hodges, 462 So.2d 330, 333 (Miss.1984) ("Hodges was entitled to rely upon Dr. Pittman's statements that the numbness would temporarily last from two to six weeks or even longer, and only thereafter could Hodges then by the exercise of reasonable diligence have known or discovered that his numbness was permanent....").
¶ 9. On the other hand, we have rejected application of the "discovery rule" when there is an absence of reasonable diligence. See Wright v. Quesnel, 876 So.2d 362, 367 (Miss.2004); Wayne Gen. Hosp. v. Hayes, 868 So.2d 997, 1001 (Miss. 2004) ("[t]he intent of the discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them.") (emphasis added). Furthermore, an individual may not take shelter in the "discovery rule" when reasonable minds could not differ that the plaintiff possessed sufficient information to bring a claim. See Sutherland, 959 So.2d at 1009 ("[b]y his own admission, Sutherland knew who, when, how and by what he had been injured soon after receiving treatment and the Zyprexa prescription from Dr. Ritter, and certainly, no later than the date of his discharge from St. Dominic.") (emphasis added); Lowery, 909 So.2d at 51-52 (a products liability case involving exposure to harmful paint vapors in which this Court found "using the standards outlined in Hayes, Quesnel, and Sanders, Lowery did not require absolute certainty nor an expert opinion to vest the right to a cause of action under this state's products liability statute."); Powe v. Byrd, 892 So.2d 223, 228 (Miss.2004) (in defending dismissal of a 2002 filing, Powe argued that the statute of limitations did not begin to run until December 1, 2000, the date of receipt of the expert opinion report. However, *168 Powe originally had filed a complaint on August 3, 2000, which was subsequently dismissed. This Court found Powe's argument "to be disingenuous and without merit."); Wright, 876 So.2d at 367 ("Wright... had enough information at the time of the death such that she knew or reasonably should have known that negligence had occurred. She had been to see Dr. Quesnel twice and received no treatment but an order to rest-her symptoms and discomfort continued, however. When she discovered that her child had died in the womb, Wright should have known that there was some causal connection between the death and Dr. Quesnel's treatment."); Hayes, 868 So.2d at 1001 (Mississippi Tort Claims Act case). Each of these decisions presents unique factual distinctions which prevent a static application of the statute. Justice Higginbotham's panel dissent clearly recognized these distinctions. This Court agrees with his conclusion that "[f]acial similarities ... create the appearance of inconsistency when results differ, but the truth is that those similarities belie greater differences that a careful examination of the facts in each case reveals. These cases all turn on questions relating to what the plaintiff knew and when." Huss, 508 F.3d at 253 (Higginbotham, J., dissenting). This is, and has been, the state of the law in Mississippi. This Court readily appreciates the difficulty courts experience in navigating this perplexing path, particularly for courts in jurisdictions which may have more definite parameters.
¶ 10. Mississippi substantive jurisprudence requires questions of disputed fact to be decided by juries, such as when Huss "with reasonable diligence might have first known or discovered" the "alleged act, omission, or neglect[.]" Miss. Code Ann. § 15-1-36 (Rev.2003). See also Parham, 552 So.2d at 125. Gayden asserts the operative date is May 10, 1998, when Huss was diagnosed with cardiomyopathy, pulmonary edema, and congestive heart failure. Huss responds that the applicable date is less than a year before suit was filed, when she, through reasonable diligence, first learned "that the administration of Terbutaline and the course of treatment by the defendants constituted negligence and caused or contributed to her cardiomyopathy, pulmonary edema, and congestive heart failure." Huss, 508 F.3d at 244.
¶ 11. On certified questions this Court "will restrict its review ... `to the performance when properly requested of the function of declaring in general terms the controlling rules' of state law,[[4]] and not the application of law to fact." Miss. R.App. P. 20 cmt. (quoting Boardman v. United Services Auto. Ass'n, 470 So.2d 1024, 1031 (Miss.1985)). Therefore, having responded to the certified question tendered, this Court finds that if this case had been tried in Mississippi state court, Gayden could not prevail as a matter of law.

CONCLUSION
¶ 12. "[T]he date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered[,]" Miss.Code Ann. § 15-1-36(1) & (2) (Rev.2003), is often an issue that must be resolved by a finder of fact on a case-by-case basis.[5] Based upon the record presented, this Court concludes that the medical-malpractice claims of Huss were not barred, as a matter of law, by the applicable statute of limitations outlined *169 in Mississippi Code Annotated Section 15-1-36. This Court will not further extend its review to "the application of law to fact." Miss. R.App. P. 20 cmt.
¶ 13. CERTIFIED QUESTION ANSWERED.
SMITH, C.J., WALLER, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J. LAMAR, J., NOT PARTICIPATING.
EASLEY, JUSTICE, CONCURRING:
¶ 14. I concur with the majority's conclusion that the medical-malpractice claims of Huss were not barred, as a matter of law. However, I write separately to expound upon the majority's discussion in paragraph 8, which cogently evinces one of the fundamental principles behind the discovery rule.
¶ 15. Pittman, Parham, and Neglen are guiding illustrations of this Court's interpretation and application of Mississippi Code Annotated Section 15-1-36 and its tolling provision. Pittman v. Hodges, 462 So.2d 330 (Miss.1984); Parham v. Moore, 552 So.2d 121 (Miss.1989); Neglen v. Breazeale, 945 So.2d 988 (Miss.2006). The statute was designed to balance the reasonable and legitimate interests of the medical providers and the public. Kilgore v. Barnes, 508 So.2d 1042, 1046 (Miss. 1987). Such was the understanding in Smith v. Sanders, 485 So.2d 1051 (Miss. 1986), the "proverbial case on all fours" regarding Mississippi's statute of limitations in medical-negligence cases. Parham v. Moore, 552 So.2d 121, 124 (Miss. 1989). As noted by the majority, Smith articulated the following:
There may be rare cases where the patient is aware of his injury prior to the two years immediately preceding the filing of his claim, but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.
Smith, 485 So.2d at 1052-53 (citing United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (interpreting the statute of limitations under the Federal Tort Claims Act; the focus is not upon when the plaintiff actually discovered that legally he had a cause of action; instead, it is upon when he discovered, or should have discovered, that he had an injury and the cause of such injury; these discoveries give him sufficient knowledge to inquire as to whether he has a cause of action)); Waits v. United States, 611 F.2d 550, 552 (5th Cir.1980) ("It is not enough to trigger the statute of limitations that the claimant is aware of his injury if he is unaware of the act or omission which caused the injury.") (citations omitted).
¶ 16. The following language from Sutherland v. Estate of Ritter, 959 So.2d 1004 (Miss.2007), which the panel majority had difficulty reconciling with Wright v. Quesnel, 876 So.2d 362 (Miss.2004), is in direct line with Smith and its progeny:
For instance, a patient who undergoes a medical procedure may develop serious complications which are clearly known. However, if the patient has no reason to know that the doctor's negligence in performing the procedure caused the complications, the discovery rule will apply, even though the injury itself is not latent at all.
*170 Sutherland, 959 So.2d at 1009.[6]
¶ 17. Though I sympathize with the Fifth Circuit's unenviable task in such matters, I agree with the majority's decision not to partake in the exercise of applying our law to facts developed via federal procedural law. The voluminous record in this case, which is remarkably full of time-gaps, leaves many unanswered questions.
WALLER, P.J., JOINS THIS OPINION.
GRAVES, JUSTICE, DISSENTING:
¶ 18. The majority concludes that Barbara Huss' medical negligence claims were not barred as a matter of law because the defendants would not have prevailed on a statute of limitations defense in a Mississippi court. By drawing such a conclusion, the majority squanders a valuable opportunity to squarely answer the question certified by the Fifth Circuit. Instead, the majority chooses to respond to the question by discussing how a Mississippi court would have decided a procedural issue  whether or not the defendants actually presented a statute of limitations defense. First and foremost, this Court has held that when answering a certified question, this Court "must understand the facts precisely as the certifying court understands them." Puckett v. Rufenacht, Bromagen & Hertz, Inc., 587 So.2d 273, 277 (Miss. 1991). This Court should review the facts and procedural history presented by the certifying court so that it can glean any context required to answer the certified question.[7] However, this Court should not concern itself with the propriety of judicial decisions regarding matters underlying the certified question, nor should it expound on what would have occurred in an alternate universe where the underlying dispute had been litigated in a Mississippi court.
¶ 19. When a federal court hears a diversity case such as this, federal law governs procedural matters. Gasperini v. Center for Humanities, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659, 673 (1996); Foradori v. Harris, 523 F.3d 477, 486 (5th Cir.2008) (citing Gasperini, 518 U.S. at 426-27, 116 S.Ct. 2211); see also Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8, 16-17 (1965) ("It is true that both the Enabling Act and the Erie rule say, roughly, that federal courts are to apply state `substantive' law and federal `procedural' law."). In a diversity matter, the applicable statute *171 of limitations and its tolling and expiration are considered substantive, and are, therefore, governed by state law. Guaranty Trust Co. v. York, 326 U.S. 99, 110-11, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, 2087 (1945). However, determining whether or not a statute of limitations defense is barred because of pleading issues is a procedural matter-one that is governed by Title III of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 7-16. The United States Supreme Court has held in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8, that
[o]ne of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power.... To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act.
Hanna, 380 U.S. at 472-74, 85 S.Ct. 1136.
¶ 20. In the underlying decision, Huss v. Gayden, 465 F.3d 201 (5th Cir.2006), the Fifth Circuit found that the statute of limitations defense was preserved. Huss, 465 F.3d at 205. The Fifth Circuit stated that the defendants asserted a statute of limitations defense in their answer. Id. at 204. The Fifth Circuit also noted that "[t]he statute-of-limitations issue was sufficiently identified in the pretrial order as an issue of continuing concern. By including the defense as an additional matter that would affect disposition of the case, the defendants indicated an intent to pursue their limitations defense as a bar to the Husses' claims." Id. at 205. The Fifth Circuit concluded that the federal magistrate judge erred by finding that the defendants had waived their statute of limitations defense.
¶ 21. In the decision in which it certified this question, the Fifth Circuit reiterated that "the limitations issue was not waived and is properly before the Fifth Circuit as a procedural matter." Huss v. Gayden, 508 F.3d 240, 244-45 (5th Cir. 2007). The Court stated that the defendants asserted a statute of limitations defense in pleadings, the pre-trial order, and as a basis for a motion for directed verdict and renewed motion for directed verdict. Id. at 245. In addition, the Court noted that the defendants continue to argue it on appeal. Id.
¶ 22. This Court has no authority to pass judgment on the Fifth Circuit's determination that the defendants preserved a statute of limitations defense throughout their pleadings. By finding that Mississippi law would preclude Gayden from raising a statute of limitations defense because of procedural pleading deficiencies, the majority misses the point of the certified question.
¶ 23. Furthermore, although the majority attempts to clarify our jurisprudence regarding medical negligence statutes of limitations, I cannot agree with its analysis. Nor can I agree with its conclusion that the "illusion of `uncertainty' and `tension'" is a result of "factual distinctions." While the application of the discovery rule and the determination of the accrual date for a medical negligence action is a fact-specific inquiry, this Court has, on a number of occasions, chosen to decide the accrual date and expiration of the statute of limitations as a matter of law. There are four cases in particular, which contribute to the lack of coherence to our medical malpractice jurisprudence, and I will address *172 these below. The majority claims that in these cases, either no reasonable minds could differ as to the accrual date, or reasonable diligence was lacking. However, a review of these cases demonstrates the lack of support for these conclusions. Notwithstanding that the facts of each case cited herein were dissimilar, the "diversity of facts" all produced outcomes that had one commonality. They favored the defendants (medical providers).
¶ 24. The seminal case addressing statutes of limitations in medical malpractice cases is Smith v. Sanders, 485 So.2d 1051 (Miss.1986). In Smith, this Court set out the standard for determining when the statute of limitations begins to run for a medical malpractice action. This Court clearly stated that a cause of action accrues "when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." Smith, 485 So.2d at 1052. This Court also stated that in determining the accrual date, the finder of fact must "focus ... upon the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury." Id. This is the standard that must be applied by the factfinder when determining whether or not a medical negligence action is timely. The factfinder must decide when the plaintiff discovered or should have discovered, with reasonable diligence, the injury, cause, and causative relationship. Until a plaintiff discovers, or reasonably should have discovered, all three elements, a cause of action has not accrued.
¶ 25. In Sarris v. Smith, 782 So.2d 721, 725 (Miss.2001), this Court added that "the statute [of limitations] should begin to run when the plaintiff should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent." This language has been cited in numerous cases decided since Sarris. See, e.g., Wright v. Quesnel, 876 So.2d 362, 366 (Miss.2004); Flores v. Elmer, 938 So.2d 824, 827 (Miss.2006); Jackson Clinic for Women, P.A. v. Henley, 965 So.2d 643, 650 (Miss.2007). However, this language must not be applied in such a way that undermines or distracts from the standard in Smith. In other words, the language in Sarris must not accelerate the accrual date, or force potential plaintiffs to investigate possible negligence claims when they cannot reasonably be expected to know of any negligence. Reasonableness must remain the cornerstone of this analysis.
¶ 26. Nevertheless, this Court has strayed from this cornerstone on several occasions. I am compelled to discuss the following cases, which I believe this Court incorrectly decided.
¶ 27. In Wayne General Hospital v. Hayes, 868 So.2d 997 (Miss.2004)[8], this Court held that the plaintiffs' claim was untimely as a matter of law because they were not diligent in investigating the cause of the decedent's death.[9] This Court concluded that because the decedent died partly of sepsis, "it should have been apparent to the plaintiffs that some negligent *173 conduct had occurred." Wayne Gen. Hosp., 868 So.2d at 1001. This Court also stated that because after the alleged negligence, the decedent was hospitalized at a different hospital, the plaintiffs should have realized that there could have been negligent medical treatment. Id.
¶ 28. This Court did not state its basis for such conclusions. It is unclear why a death from sepsis reasonably indicates medical malpractice rather than a natural, though tragic, death. It is also unclear why a subsequent hospitalization at a different facility should have alerted a reasonable person of negligence. Simply because a patient was transferred to another hospital following treatment at an initial hospital does not inherently suggest negligence. Nonetheless, based on these conclusory statements, this Court found that the statute of limitations ran from the decedent's death, thus barring the plaintiffs' claim.
¶ 29. Similarly, in Wright v. Quesnel, 876 So.2d 362 (Miss.2004), this Court found that the plaintiff's claim was time-barred as a matter of law because the plaintiff was not diligent in investigating the death of a fetus in the womb. This Court found that the plaintiff "had enough information at the time of the death such that she knew or reasonably should have known that negligence had occurred." Wright, 876 So.2d at 367. This Court held that because the plaintiff had been treated by the defendant during her pregnancy and because her fetus died, she "should have known that there was some causal connection between the death and Dr. Quesnel's treatment." Id. Again, the Court does not indicate why it believed that the death of a fetus constitutes constructive knowledge of medical negligence. There are surely many instances where fetuses die in the womb where medical negligence is not involved. Under the circumstances, there is no reason why the plaintiff should have suspected negligence and investigated a causal connection between the death and the negligence. Id. at 370 (Graves, J., dissenting).
¶ 30. In Powe v. Byrd, 892 So.2d 223 (Miss.2004), this Court determined that the plaintiff's claim was untimely as a matter of law. In this case, the decedent had been treated for two years for gastritis and hemorrhoids, and was then diagnosed with colon cancer. Powe, 892 So.2d at 227-28. The plaintiff, the decedent's widow, filed a complaint within two years of the decedent's death, but the defendant was not served until three days beyond the 120-day period for service as required by Mississippi Rule of Civil Procedure 4(h). Id. at 224-25. Although miscommunications between the plaintiff's attorney, secretary, and special process server may have contributed, the three-day delay occurred largely because the plaintiff was waiting for a medical expert's opinion that the doctor was negligent. Id. at 225. The original complaint was dismissed for failure to show good cause for the delay in service, and the plaintiff filed a second complaint, which was barred by the statute of limitations. Id.
¶ 31. The plaintiff argued that the second complaint should have been considered timely because it was filed within two years of the plaintiff's receipt of the expert opinion and, therefore, within two years of the plaintiff's discovery of the causative relationship between the doctor's negligence and the decedent's death. Id. at 227. This Court, however, found that argument "disingenuous and without merit," presumably because the plaintiff filed a first complaint before receiving the expert opinion regarding causation. Id. at 228. This case has the perverse effect of punishing a plaintiff for erring on the side of caution and filing a complaint within *174 two years of the death (the earliest possible point at which the statute of limitations on a medical malpractice suit could be considered expired), and then exercising reasonable diligence in obtaining an expert opinion before serving the defendant. Returning to the standard in Smith, the statute of limitations in this case should have commenced when the plaintiff could reasonably be held to have knowledge of the injury, the cause, and the causative relationship. Smith, 485 So.2d at 1052. Accordingly, the statute of limitations commenced when the plaintiff obtained an expert opinion as to the cause of her husband's death. Prior to that point, the plaintiff cannot reasonably be held to have knowledge of the causative relationship. It is unclear how treatment for less serious conditions followed by a diagnosis of a more serious condition reasonably suggests medical negligence rather than conscientious treatment for minor conditions followed by the discovery and diagnosis of a serious condition.
¶ 32. In Sutherland v. Estate of Ritter, 959 So.2d 1004 (Miss.2007), this Court found that the plaintiff's claim was untimely as a matter of law because he was aware of certain side effects caused by medication negligently prescribed to him, but failed to file suit within two years of that realization. In Sutherland, this Court conflated the plaintiff's knowledge of less serious side effects with knowledge of Tardive Dyskinesia Syndrome, which can cause permanent and irreversible neurological damage. Sutherland, 959 So.2d at 1006. The plaintiff did realize that the psychiatric medication that he was prescribed and taking caused him to experience unpleasant side effects. Id. However, this did not mean that he was aware that he had tardive dyskinesia. Id. at 1011 (Diaz, J., dissenting). Moreover, it did not mean that he should reasonably have known that the medication he was prescribed caused the tardive dyskinesia. Id. Many psychiatric medications cause undesirable side effects; whether or not the medication was negligently prescribed is a distinct and separate inquiry. Nonetheless, this Court concluded that the plaintiff's knowledge of less serious side effects constituted actual knowledge that he had tardive dyskinesia that was caused by the medication. Id. at 1009-10. Again, there is no indication from this Court why knowledge of undesirable side effects would reasonably indicate medical negligence.
¶ 33. In these four cases, this Court wrongly determined that the plaintiffs' claims were time-barred as a matter of law, and should have at least directed the trial courts to allow the juries to decide the timeliness of the actions. Instead, this Court took these fact-specific inquiries away from the juries and decided that the statutes of limitations had expired as a matter of law. The majority here argues that the facts in these cases either clearly demonstrate a lack of reasonable diligence or that all reasonable minds would conclude that the statute had expired. However, the facts in these cases do not provide support for such conclusions. Rather, this Court wrongly applied the Smith standard to the facts. In Wright and Sutherland, this Court failed to even mention or acknowledge that the statute of limitations runs from the time "when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship." Smith, 485 So.2d at 1052.
¶ 34. The correct legal standard for determining the accrual of a medical malpractice claim remains the standard stated in Smith. Today, the majority clouds the issue by discussing procedural issues properly governed by federal law and decided by federal judges in this case. It then *175 dismisses the problems in our medical malpractice jurisprudence by citing "factual distinctions" that somehow allow this Court to substitute its opinion for that of a jury whenever it decides to do so. I dissent.
DIAZ, P.J., JOINS THIS OPINION.
NOTES
[1] The panel majority added that "[i]n certifying the limitations question, and in our discussion of that question, we disclaim any intention or desire that the Supreme Court of Mississippi confine its reply to the precise form or scope of the questions certified." Huss, 508 F.3d at 248.
[2] According to the panel majority, "we are certifying an issue regarding limitations for resolution by the Mississippi Supreme Court in light of the uncertainty as to Mississippi law." Huss, 508 F.3d at 244 (emphasis added).
[3] The exception lies in those cases where the relevant dates are either undisputed by admission or pleading, or are so manifest that reasonable minds could not differ. See Sutherland v. Ritter, 959 So.2d 1004, 1009 (Miss. 2007); Smith v. Sanders, 485 So.2d 1051, 1053 (Miss. 1986). For example, a medical-malpractice action arising after an individual is admitted for removal of his gangrenous right foot, and the procedure is instead performed on his only remaining good foot, the left, leaves little doubt as to when the statute begins to run.
[4] The applicable "controlling rul[e]" is clearly outlined in Justice Carlson's well-reasoned opinion in Sutherland. See Sutherland, 959 So.2d at 1008-09.
[5] For exceptions, see footnote 3 supra.
[6] By my interpretation, the passage also serves to illustrate a distinction the Court was making between Mississippi Code Annotated Section 15-1-49 (Mississippi's three-year general statute of limitations governing "latent injury or disease") and Section 15-1-36 (Mississippi's two-year statute of limitations governing medical-negligence matters). See Sutherland, 959 So.2d at 1008-09. In Williams v. Kilgore, 618 So.2d 51, 53 (Miss. 1992), we explained the creation of Mississippi Code Annotated Section 15-1-36:

[In] 1976, the applicability of Miss.Code Ann. § 15-1-49 (1972) to medical malpractice actions was supplanted by the enactment of Miss.Code Ann. § 15-1-36 (1972) (as amended), which created a two year statute of limitations specifically for medical malpractice actions. Although the new statute shortened the limitation period, it liberalized and memorialized the definition of "accrual," providing that the statute begins to run "from the date the alleged act, omission or neglect shall or with reasonable diligence might have first been known or discovered." § 15-1-36(1).
[7] It should be noted that although the majority emphasizes that Mississippi Rule of Appellate Procedure 20(a) requires that this Court answer certified questions of law, and prevents this Court from applying the law to the facts, this Court has previously applied the law to the facts of a case. See, e.g., McIntyre v. Farrel Corp., 680 So.2d 858, 860 (Miss. 1996) (citing Puckett, 587 So.2d 273).
[8] In the interest of full disclosure, the author of this dissenting opinion was the trial judge in Wayne General Hospital v. Hayes.
[9] Although Wayne General Hospital v. Hayes involved a claim under the Mississippi Tort Claims Act (MTCA), the analysis of the statute of limitations remains good reference for non-MTCA medical malpractice actions. This is also the case for Wright v. Quesnel, 876 So.2d 362 (Miss.2004), and Powe v. Byrd, 892 So.2d 223 (Miss.2004), which will be addressed in turn.