# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00050-SCT

*JOEL PHILLIP McNINCH, JR., BY AND*
*THROUGH CHERYL HUTSON McNINCH,*
*INDIVIDUALLY, AND ON BEHALF OF AND FOR*
*THE USE AND BENEFIT OF THE WRONGFUL*
*DEATH BENEFICIARIES OF JOEL PHILLIP*
*McNINCH, JR., AND THE ESTATE OF JOEL*
*PHILLIP McNINCH, JR., BY CHERYL HUTSON*
*McNINCH, EXECUTRIX*

*v.*

*BRANDON NURSING & REHABILITATION*
*CENTER, L.L.C. AND BRANDON HMA, L.L.C.*
*D/B/A MERIT HEALTH RANKIN*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2022 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | MICHAEL A. HEILMAN |
| | EDWARD TAYLOR POLK |
| | DANIEL JAMES HAMMETT |
| | GEORGE CLANTON GUNN, IV |
| | W. DAVIS FRYE |
| | WILLIAM HARRISON WEBB |
| | MARK P. CARAWAY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL A. HEILMAN |
| | EDWARD TAYLOR POLK |
| ATTORNEYS FOR APPELLEES: | W. DAVIS FRYE |
| | MARK P. CARAWAY |
| | GEORGE CLANTON GUNN, IV |
| | WILLIAM HARRISON WEBB |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 06/27/2024 |

MOTION FOR REHEARING FILED:

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. In this wrongful death action, the trial court granted summary judgment to the defendant nursing home and hospital, holding that the complaint was filed after the expiration of the statute of limitations. The plaintiffs argued below and now on appeal that the discovery rule operated to toll the statute of limitations until the widow of the deceased had received the decedent's medical records. On the particular facts of this case, we find that the trial court erred by granting summary judgment to the defendants. We therefore reverse and remand for further proceedings.

## FACTS AND PROCEEDINGS BELOW

¶2. Joel Phillip McNinch, Jr., suffered from dementia and other serious health problems. He was admitted to Brandon Nursing and Rehabilitation Center, LLC ("Brandon Nursing"), on June 7, 2019. In late August 2019, he was admitted to Merit Health Rankin ("Merit Health") "due to some combative behaviors" related to his dementia, and he returned to Brandon Nursing on September 11, 2019. At some point he developed a decubitus ulcer. He was admitted to St. Dominic Hospital on September 16, 2019, and died the following day, September 17, 2019. His discharge papers from St. Dominic listed septic shock, urinary tract infection, gram-negative bacteremia, acute kidney injury, lactic acidosis, respiratory failure requiring intubation, metabolic encephalopathy, and metabolic acidosis as the final discharge diagnoses. Mr. McNinch's death certificate listed "septic shock due to Proteus UTI and Bacterium" as the cause of death.

¶3.     His widow, Cheryl McNinch, requested her husband's medical records from Brandon Nursing and Merit Health soon after his death and she received them mid-December 2019. She met with a lawyer in January 2020. Mrs. McNinch told the attorney that "she had no idea if any care provided to her husband was inadequate or caused or contributed to his death, but she wanted to find out if any wrongdoing had occurred." In her deposition testimony, when asked why she had requested the records, she responded, "I just was curious as to what happened, you know. I didn't know if something in those medical records could tell me why he died so suddenly." When asked, "were you concerned that Brandon Nursing & Rehab had done something wrong?" she replied, "[n]o. I just was curious as to what had happened at the time of his death." She made similar comments repeatedly throughout her deposition, referencing her curiosity in light of the general lack of information she had regarding her husband's final illness. She was aware of his recurring UTIs and the bed sore prior to his death. Her daughter, who is a nurse, observed at the time that his decline was "awfully fast."

¶4.     Her attorney sent the defendants notice of intent to sue on September 3, 2021, and filed the complaint on January 18, 2022. The complaint asserted causes of negligence, medical malpractice, gross negligence, and reckless disregard. It alleged that the substandard care Mr. McNinch received had "accelerated the deterioration of his health and physical condition beyond that caused by the natural aging process and resulted in physical and emotional trauma including but not limited to pressure ulcers, malnutrition, weight loss, disfigurement, poor hygiene, dehydration, urinary tract infections, sepsis, and death." It further asserted that when he was admitted to Brandon Nursing, "he was adequately hydrated

and nourished, and had no pressure ulcers."

¶5.     The defendants moved to dismiss, arguing that the action was barred by the two-year statute of limitations pursuant to Mississippi Code Section 15-1-36 (Rev. 2019), even after taking into account the sixty-day tolling period triggered by issuance of the notice of intent to sue. The defendants argued that the statute had expired at the latest on November 17, 2021. Mrs. McNinch argued that the discovery rule operated to toll the statute of limitations at least until her receipt of the medical records in mid-December 2019. The trial court converted the defendant's motion to dismiss into a motion for summary judgment and granted the motion without holding a hearing.

¶6.     The wrongful death beneficiaries now appeal.

### STANDARD OF REVIEW

¶7.     This Court utilizes a *de novo* standard of review when considering a trial court's grant of summary judgment. ***Miss. Hub, LLC v. Baldwin***, 358 So. 3d 305, 307 (Miss. 2023). "The evidence is viewed in the light most favorable to the party opposing the motion." ***Davis v. Hoss***, 869 So. 2d 397, 401 (Miss. 2004). The running of the statute of limitations may be the subject of summary judgment when there is no genuine issue of material fact concerning whether the statute has run. ***Miss Comp Choice, SIF v. Clark, Scott & Streetman***, 981 So. 2d 955, 962 (Miss. 2008).

### DISCUSSION

¶8.     The statute of limitations for medical malpractice runs for two years "from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first

known or discovered[.]" Miss. Code Ann. § 15-1-36(2) (Rev. 2019). Pre-suit notice must be given to the defendants, and "[i]f the notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others." Miss. Code Ann. § 15-1-36(15) (Rev. 2019). To claim benefit of the discovery rule, a plaintiff must have been "reasonably diligent in investigating the circumstances surrounding the injury." *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004). "The question of whether a statute of limitations is tolled by the discovery rule turns on the factual determination of 'what the plaintiff knew and when.'" *Raddin v. Manchester Educ. Found. Inc.*, 175 So. 3d 1243, 1249 (Miss. 2015) (internal quotation marks omitted) (quoting *Stringer v. Trapp*, 30 So. 3d 339, 342 (Miss. 2010)). "Thus, '[o]ccasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury[.]'" *Stringer*, 30 So. 3d at 342 (first alteration in original) (quoting *Smith v. Sanders*, 485 So. 2d 1051, 1053 (Miss. 1986)).

¶9.     "Given the inherent complexity of many medical-malpractice cases, the commencement date of the legislatively-enacted limitations period requires a case-by-case analysis." *Huss v. Gayden*, 991 So. 2d 162, 164 (Miss. 2008). "Application of the discovery rule is a fact-intensive process." *Sarris v. Smith*, 782 So. 2d 721, 725 (Miss. 2001). A poor outcome can occur even in the absence of negligent treatment; therefore the proper focus is on reasonable discovery of the negligence rather than discovery of the injury. *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 206 (Miss. 1999). Even when an injury is not

latent, "if the patient has no reason to know that the doctor's negligence . . . caused the complications, the discovery rule will apply[.]" *Sutherland v. Est. of Ritter*, 959 So. 2d 1004, 1008-09 (Miss. 2007).

¶10.    In *Sarris*, we held that a widow could not reasonably have known that her husband's death was the result of negligence until she had acquired access to his medical records. 782 So. 2d at 724. After having a heart attack, the husband had been sent home from the hospital after a doctor failed to inform him or to add to his patient chart that he required prompt follow-up care. The husband died of a second heart attack the next day at home. *Id.* at 722. Rejecting the defendants' argument that the statute could not have begun running later than the husband's death, we noted that for purposes of applying the discovery rule, "the operative time is when the [plaintiff] can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." *Id.* at 723 (internal quotation marks omitted) (quoting *Smith v. Sanders*, 485 So. 2d 1051, 1052 (Miss. 1986)). Because the widow was unaware of the negligent action related to follow-up care, the discovery rule operated to toll the statute of limitations. *Id.* Additionally, we held that the statute of limitations was tolled during the nine-month delay in receiving the records. *Id.* at 725.

¶11.    However, we "reject[ed] a bright line rule that the statute of limitations can never start to run until the plaintiff has access to medical records." *Id.* at 725. This approach takes into account that:

> Some plaintiffs might need medical records in order to know of negligent conduct, and yet might still be barred if they failed to diligently seek those

6

records. Others might gain actual knowledge of negligent conduct through personal observation or other means; such plaintiffs are not entitled to wait until they have medical records before the statute begins to run.

*Id.* at 725. Our Court of Appeals has noted, and we agree, that "not every death certificate will initiate the running of the statute of limitations" although it may when "combined with other factors." ***Butler v. PHC-Cleveland Inc.*** (***Est. of Butler ex rel. Butler***), 282 So. 3d 441, 444 (Miss. Ct. App. 2019) (holding that statute of limitations began to run when the plaintiff received death certificate in which decubitus ulcers were listed as cause of death and plaintiff had expressed repeated concerns to healthcare workers about the ulcers not healing before the death).

¶12.    Here, Mrs. McNinch argues that the information and concerns she had about her husband's health prior to and at the time of his death fell short of the notice necessary to trigger the running of the statute of limitations. While she and her daughter were concerned with how quickly he had declined, they argue that knowledge of his rapid decline did not constitute knowledge of negligence. She had knowledge of Mr. McNinch's recurring UTIs and that he had a UTI at the time of his death, but she did not have knowledge related to the course of treatment for the UTI prior to the death or whether the quality of the treatment had a causal relationship to the death. She had knowledge of the bed sore, but the bed sore was not listed as a cause of death on the death certificate. Further, she sought access to the medical files out of curiosity and because she felt she was in the dark given the lack of communication from her husband's care providers.

¶13.    Whether the discovery rule operates to toll the statute of limitations requires a fact-

intensive, case-by-case analysis. The case before us today is generally comparable to *Sarris*. On the specific record before us and viewing the facts in the light most favorable to the non moving party, genuine issues of material fact exist regarding whether Mrs. McNinch had knowledge of negligent conduct through personal observation or other means prior to or at the time of Mr. McNinch's death. While death is not a latent injury, the discovery rule will still operate to toll the statute of limitations when the medical records are necessary to discover the negligence.

¶14. In circumstances in which access to medical records is necessary to discover negligence, a plaintiff "might still be barred if they failed to diligently seek those records." *Sarris*, 782 So. 2d at 725. Here, Mrs. McNinch exercised reasonable diligence in requesting the medical records promptly, receiving them mid-December 2019. Viewing Mrs. McNinch's receipt of the medical records as the earliest point at which the statute of limitations began to run, the complaint, which was filed on January 18, 2022, was filed within two years and sixty days. Therefore, on review of the record available to us on appeal, the trial court erred by granting summary judgment to the defendants.

## CONCLUSION

¶15. The trial court erred by holding that no questions of material fact exist regarding whether the discovery rule operated to toll the statute of limitations at least until the plaintiff had gained access to the decedent's medical records. Therefore, we reverse the judgment and remand the case to the circuit court for further proceedings.

¶16. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**